Nancy L. DESJARLAIS et al.

v.

USAA INSURANCE COMPANY.

No. 2002–137–Appeal.

Supreme Court of Rhode Island.

June 9, 2003.

Ronald J. Resmini, Providence, for Plaintiff.

Donna M. Lamontagne/Jeffrey S. Fleischaker, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Must any derivative claims for loss of consortium, society, and companionship be joined with the underlying personal-injury and the uninsured/underinsured motorist (UIM) claims of any spouse or parent who was injured in an accident (the impaired party)? Or can the impaired party's spouse and children (the deprived parties) later initiate and maintain one or more separate actions seeking to recover for their alleged loss of consortium and society after the impaired party has settled, arbitrated, or litigated his or her claims?

Unless the deprived parties can affirmatively demonstrate that joinder of their derivative claims with those of the impaired party was not feasible before the impaired party settled, arbitrated, or litigated his or her claims, we hold that the deprived parties must join their claims with those of the impaired party before the

impaired party settles his or her claims, obtains an arbitration award, or before a judgment adjudicating the impaired party's claims has become final, whichever event first occurs.

Although we reaffirm that the derivative claims of the deprived parties constitute separate claims, we hold that joinder of such claims with the impaired party's underlying tort and UIM claims is mandatory whenever it is feasible to do so. The purpose of this mandatory-joinder rule is to avoid duplicative litigation, potentially inconsistent results, and possible multiple recoveries against the same defendants for related claims that can and should be resolved at the same time. *See* Super. R. Civ. P. 19 ("**Joinder of persons needed for just adjudication.**"). Here, because the deprived spouse failed to demonstrate that joinder of her derivative claims was not feasible before the impaired party settled his underlying tort claims and arbitrated his UIM claim, we affirm the Superior Court's summary judgment in favor of defendant UIM insurance carrier, USAA Insurance Company (USAA).

### Facts and Travel

We recently addressed this same factual situation when we passed on the merits of the impaired party's UIM claim in *Desjarlais v. USAA Insurance Co.*, 818 A.2d 645, 646–47 (R.I.2003) (per curiam) (*Desjarlais I*). Thus, we have no need to replow this same ground in this case. Suffice it to say that the salient facts pertinent to this appeal and to *Desjarlais I* arose from a motor-vehicle accident on February 7, 1995, involving David Desjarlais (Desjarlais or impaired party), and another motorist, Jon K. Polis (Polis or the alleged tortfeasor). *Id.* at 646–47. After the accident, Desjarlais asserted a claim against Polis, whose liability insurer was Nationwide Insurance. Eventually, Desjarlais settled his claim against Polis when Polis's liability insurer, Nationwide, paid him the policy

limits of $100,000. Desjarlais's own UIM insurer, defendant USAA, consented to this settlement. At no point during the pendency of this tort claim, however, did Desjarlais's wife, Nancy L. Desjarlais, who is plaintiff in this case, assert her derivative claims against Polis, much less did she seek to join them with the tort claims of Desjarlais. Indeed, plaintiff made no attempt to notify Polis, Nationwide, or USAA of these derivative claims until after Desjarlais had settled and released his claim against the alleged tortfeasor and arbitrated his UIM claim against USAA.

Thus, after obtaining a policy-limits settlement from the alleged tortfeasor, Desjarlais then sought an additional recovery from his own UIM insurer, USAA. Ultimately, the parties submitted his UIM claim to binding arbitration. On July 6, 2001, a panel of arbitrators issued an award in favor of USAA, finding that the damages Desjarlais incurred as a result of the automobile accident were insufficient to require additional compensation from his UIM insurer. The arbitration panel submitted a supplemental decision on July 20, 2001, indicating that its finding was based on Desjarlais's "fail[ure] to prove that he sustained a permanent disability." Again, Desjarlais's wife—plaintiff herein—made no attempt to assert or to join her derivative claims for loss of consortium and society before the arbitration panel rendered its final award in favor of defendant USAA. Ultimately, after a hearing, the Superior Court confirmed the arbitration award in favor of USAA on September 10, 2001.

On August 23, 2001, the day after USAA petitioned the Superior Court to confirm the arbitration award, and approximately six and one-half years after her husband's accident, Desjarlais's wife, plaintiff herein, began this separate lawsuit against USAA, both in her own name and as parent and

next friend of her two minor children, Kyle and Sabrina Desjarlais (children). In her complaint, she alleged for the first time that, as a result of her husband's 1995 motor-vehicle accident and injuries, she and her two children incurred separate injuries for loss of consortium and society, respectively. Although Desjarlais attempted to raise his wife's loss-of-consortium claims at the Superior Court hearing on September 10, 2001—the purpose of which was to confirm the arbitration award—his wife and children had failed to join their derivative claims with Desjarlais's underlying tort claims against Polis before Desjarlais settled these claims and released both Polis and his liability insurer, Nationwide. Nor did they attempt to join their claims seeking UIM coverage against USAA with those of Desjarlais in the arbitration proceeding. Thus, at the Superior Court hearing to confirm the arbitration award, the motion justice concluded that the loss-of-consortium claims were not properly before the court because the deprived parties never joined these claims with Desjarlais's personal-injury claims or with the arbitration of his UIM claims.

In due course, USAA moved for summary judgment in this case, arguing that the applicable law required plaintiff to join her derivative claims with those of her husband when he sought to recover for his personal injuries, and that her failure to do so barred her from now bringing and maintaining her derivative claims separately. USAA argued that the very nature of plaintiff's derivative claims prevented her from maintaining them in an independent action after her husband had settled his underlying tort claims and resolved his UIM claim via a judicially confirmed, binding arbitration proceeding. Further, USAA contended, policy considerations—including the need to minimize duplicative litigation and potentially conflicting results—required mandatory joinder of plaintiff's derivative claims with the underlying claims of her husband.

In response, plaintiff argued as follows: although her loss-of-consortium and her children's loss-of-society claims were derivative in the sense that they depended on the success of Desjarlais's underlying tort and UIM claims, they still were separate and distinct causes of action that could be maintained in a separate lawsuit, independent of her husband's personal injury and UIM claims. She also argued that, by USAA consenting to her husband's settlement with Polis for the limits of his liability policy with Nationwide, and by USAA thereafter preventing plaintiff and her children from submitting separate UIM claims for their derivative losses, USAA was allowing one person insured under its policy to reap all the UIM coverage benefits, thereby leaving nothing to cover the losses of its other insureds: namely, plaintiff and her children.

Ultimately, a Superior Court justice granted USAA's motion for summary judgment, ruling that the UIM statute, G.L.1956 § 27–7–2.1, case law interpreting it, and the relevant USAA insurance-policy language did not support plaintiff's position that she should be allowed to maintain her derivative claims independently in a separate proceeding despite the resolution of her husband's underlying tort and UIM claims.

Ruling in favor of USAA, the motion justice said:

> "I don't think that it was ever intended that the [UIM] carrier should have to litigate the issue twice. I don't think that it was ever intended that if a[UIM] carrier gave consent to the insured to settle for the policy limits that the carrier was setting itself up for a derivative claim based upon the theory that by consenting to the settlement the [UIM] carrier was allowing one insured to use

up all their liability coverage and preventing other insureds from pursuing their derivative claims.

"I think to favor the plaintiff's position would result in chilling the willingness of the [UIM] carriers to consent to permit their insureds *to settle with the tort* feasors [*sic*] and then pursue uninsured motorist claims. They would first have to fully examine all potential derivative claims. * * * I don't think that was intended by the statute or the applicable case law. These are derivative claims. They should have been joined with [Desjarlais's] claim against the [UIM] carrier. It was one claim per person, and they should not have to defend it twice."

On appeal, plaintiff argues that the motion justice erred in granting summary judgment in favor of USAA. She asserts that her derivative claims for loss of consortium and her children's claims for loss of society constitute separate causes of action. Thus, she contends, she should be allowed to maintain these claims on behalf of herself and her children in a separate lawsuit, filed later, provided she has asserted such claims within the applicable statute of limitations for doing so. Here, she points out, because her UIM claims against USAA sounded in breach of contract, she filed them well within the applicable ten-year statute of limitations for doing so. *See Pickering v. American Employers Insurance Co.,* 109 R.I. 143, 148–50, 282 A.2d 584, 588 (1971) (holding that an action against one's own carrier for UIM benefits "is fundamentally one in contract" and thus subject to the statute of limitations for breach-of-contract claims found in G.L.1956 § 9–1–13); *see also* § 9–1–13 (establishing a ten-year statute of limitations for civil actions, including breach-of-contract claims, "[e]xcept as otherwise specially provided"). Further, plaintiff argues, neither she nor her children ever have released their derivative claims either to the alleged tortfeasor (Po-

lis), to his liability insurer (Nationwide), or to her UIM insurer (USAA). She suggests that the motion justice's ruling implies that she and her children somehow have waived their separate derivative claims by their failure to join them with Desjarlais's underlying tort and UIM claims. But her derivative claims are still viable, she insists, because neither she nor her children have waived them or released them to anyone; therefore, they cannot possibly be bound by the settlement of her husband's personal-injury claim or by the outcome of his UIM arbitration proceedings with USAA because neither she nor her children participated as claimants or as other parties in those proceedings.

USAA, on the other hand, maintains that the court properly granted summary judgment in its favor. It argues that the deprived parties' failure to join their derivative claims with Desjarlais's underlying personal injury and UIM claims precluded them from asserting them separately in an independent lawsuit filed later against the UIM carrier. It contends that plaintiff and her children should have joined their derivative claims with those that Desjarlais had asserted before he resolved these claims through settlement and binding arbitration, respectively. USAA suggests that because plaintiffs' derivative claims were inextricably connected to the underlying tort and UIM claims that spawned their existence, they cannot be maintained separate and apart from them in a later-filed lawsuit. Thus, advancing an argument more akin to claim preclusion than to waiver, USAA contends that the motion justice properly precluded plaintiff from maintaining these claims via a later-filed separate lawsuit.

### Analysis

In Rhode Island, a statute enables both married persons and unemancipated mi-

nors to recover damages for loss of consortium and for loss of parental society and companionship, respectively, caused by tortious injury to an impaired spouse or parent. *See* § 9–1–41.[1] In *Sama v. Cardi Corp.,* 569 A.2d 432 (R.I.1990), this Court held that § 9–1–41 did not change the common-law nature of a loss-of-consortium claim from one that was derivative to one that could be maintained independent of the underlying claims of the injured spouse:

> "[A]n action for loss of consortium under § 9–1–41, although a separate cause of action * * *, is not an independent action but a derivative one *that is attached to the claim of the injured spouse.* It arises from the injured spouse's physical injury and is dependent upon the success of the underlying tort claim." *Sama,* 569 A.2d at 433. (Emphasis added.)

Later, in *Normandin v. Levine,* 621 A.2d 713 (R.I.1993), the Court further clarified this holding, emphasizing that a claim for loss of consortium, although "inextricably linked to the injured spouse's action," remained an "entirely unique cause of action under the law." *Id.* at 716. In *Normandin,* this Court upheld a Superior Court trial justice's refusal to permit the joinder of a deprived spouse's loss of consortium claim to the impaired party's claims *after* the requisite statute of limitations for the underlying tort claim had expired. The Court held that "the assertion of one spouse's right [to bring a cause of action for personal injuries] within the statutory period of limitations will not excuse the failure of the other spouse to assert within the statute of limitations his

or her own separate right [to bring a claim for loss of consortium]." *Id.*

■ Thus, even though they constitute separate and distinct claims, loss-of-consortium and loss-of-society claims still are subject to the applicable statutes of limitation for the impaired party's underlying claims. Indeed, they are inextricably linked to the underlying claims because their success depends on the success of those underlying claims. *Id.;* see also *Hodor v. United Services Automobile Association,* 637 A.2d 357, 358–59 (R.I.1994) (holding that, even though the parents, in their capacity as co-guardians of their injured son, specifically reserved their right to claim loss of society and companionship when they executed a release in favor of the UIM insurer for payment of the UIM policy limits for "each person," they could not maintain a later lawsuit against the same UIM carrier seeking a recovery for their derivative claims under the "each-accident" limit of the policy); *Allstate Insurance Co. v. Pogorilich,* 605 A.2d 1318, 1320–21 (R.I.1992) (holding that, because "the loss of consortium claim * * * is not truly independent but rather derivative and attached inextricably to the claim of the injured spouse," the deprived spouse could not recover any additional sum from her UIM insurer after it paid the "each person" policy limits to her impaired spouse). Further, we have held that a deprived party's right to bring a cause of action for loss of consortium and society depends on the impaired spouse's or parent's ability to recover for his or her injuries in a claim against the same defendant. *See Sama,* 569 A.2d at 433. The Court

---

1. General Laws 1956 § 9–1–41 provides, in pertinent part:

> **"Loss of consortium—Loss of society and companionship.—**
>   (a) A married person is entitled to recover damages for loss of consortium caused by tortious injury to his or her spouse.

>   (b) An unemancipated minor is entitled to recover damages for the loss of parental society and companionship caused by tortious injury to his or her parent."

also has recognized that derivative claims such as loss of consortium and loss of society are so intertwined with the impaired spouse's or parent's claim as to require their inclusion within the "per person" limit on an insurance-policy's coverage, rather than the "per accident" limit. *See Hodor*, 637 A.2d at 358; *Amica Mutual Insurance Co. v. Jorge*, 632 A.2d 341, 342 (R.I.1993) (per curiam); *VanCleef v. Navilliat*, 622 A.2d 442, 443 (R.I.1993) (per curiam); *Pogorilich*, 605 A.2d at 1320–21; *Ferreira v. United Services Auto Association*, 602 A.2d 509, 510 (R.I.1991) (mem.).

Moreover, as we recently observed, "a growing number of jurisdictions have refused to permit a separate action for loss of consortium and require joinder of the consortium claims with the principal dispute * * *." *Leonard v. McDowell*, 824 A.2d 1266, 1272 (R.I. 2003) (citing *Jacoby v. Brinckerhoff*, 250 Conn. 86, 735 A.2d 347, 350 (1999)). The chief reason cited for requiring these claims to be joined "with the principal dispute" is the desire to avoid duplicative litigation—obviating the need for a party, such as USAA, to defend against the same basic claim twice or thrice over—and thereby reducing the risk of multiple recoveries and inconsistent results. *See Villareal v. State Department of Transportation*, 160 Ariz. 474, 774 P.2d 213, 220 (1989); *Jacoby*, 735 A.2d at 350; *Buckley v. National Freight, Inc.*, 90 N.Y.2d 210, 659 N.Y.S.2d 841, 681 N.E.2d 1287, 1290 (1997); *Ueland v. Reynolds Metals Co.*, 103 Wash.2d 131, 691 P.2d 190, 194 (1984); *see also* 2 F. Harper, F.

James, & O. Gray, *The Law of Torts* § 8.9 at 553–54 n.14 (2d ed.1986); Restatement (Second) *Torts* § 693(2) at 495 and cmt. g at 497–98 (1977).

Because we consider this mandatory-joinder rationale to be persuasive, we now add Rhode Island to the above-cited jurisdictions that require derivative claims to be joined with the impaired party's underlying claims—unless the deprived plaintiff(s) can demonstrate that joinder was not feasible under the circumstances. This requirement of mandatory joinder recognizes that family members asserting derivative claims for loss of consortium, society, or companionship constitute "persons needed for just adjudication" within the scope of Rule 19.[2]

### The Spouse's Loss–of–Consortium Claim

The requirement, when feasible, of mandatorily joining derivative claims with the underlying claims of the impaired party is consistent with the position of the Restatement (Second) *Torts* § 693, entitled "Action by One Spouse for Harm Caused by Tort Against Other Spouse." That section requires the deprived spouse to join his or her claim for loss of consortium with the underlying claim of the impaired spouse as a precondition to allowing the recovery of any damages for this derivative claim. *See* Restatement (Second) *Torts* § 693(2) at 495 ("Unless it is not possible to do so, the action for loss of society and services is required to be joined with the [spouse's] action for illness or bodily harm, and re-

2. Rule 19(a) of the Superior Court Rules of Civil Procedure provides, in pertinent part:
    "**Joinder of persons needed for just adjudication.—**
    (a) *Persons to be Joined if Feasible.* A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest."

covery for loss of society and services is allowed only if the two actions are so joined."). This requirement is further illustrated in comment g, entitled, "Joinder":

> "The invasion of the deprived spouse's interests in the marriage is a separate tort against that spouse, although it is conditioned upon factors that also constitute a tort against the [impaired] spouse. Despite this, the possibility of double recovery, together with the danger that different juries may return verdicts that are inconsistent or that overlap, must be obviated when possible by requiring that the cause of action of the deprived spouse for loss of society and services be joined with that of the impaired spouse for trial. 'Joinder' includes consolidation of suits for trial, as well as the addition of either spouse as a party plaintiff in an action begun by the other.
>
> " * * *
>
> "It is possible to join the actions * * * in all situations in which the deprived spouse has had full opportunity to join in the impaired spouse's action and assert a claim and has failed to do so. Thus if the impaired spouse has begun an action for bodily harm, and then settled it and given a release, and the deprived spouse has stood by throughout with full knowledge of the conduct, it has been possible to join in the action at any time before it has become barred by the release, and the deprived spouse cannot now be permitted to maintain a separate action." *Id.* § 693, cmt. g at 497–98.

Thus, while recognizing that a deprived spouse's claim for loss of consortium remains a separate claim, the applicable restatement rule requires joinder whenever possible to avoid the risk of multiple recoveries, inconsistent results, and duplicative litigation. *Id.* As the New York Court of Appeals recently observed, a majority of states that have addressed this issue have concluded that derivative claims for loss of consortium must be joined, whenever feasible, with the claims of the impaired spouse. *Buckley,* 659 N.Y.S.2d 841, 681 N.E.2d at 1290. In doing so, these courts have recognized that joinder conserves judicial resources, discourages "sharp litigation practices," and is "consistent with the view that a loss of consortium claim represents an injury to the marital relationship." *Id.*

Consistent with New York, the highest courts in other states likewise have noted that a spouse's claim for loss of consortium should be joined with the impaired spouse's tort claim unless joinder was not feasible. *See Jacoby,* 735 A.2d at 350–51 (holding that in Connecticut mandatory joinder is consistent with the derivative nature of a loss-of-consortium claim); *accord Schreiner v. Fruit,* 519 P.2d 462, 466 (Alaska 1974); *Thill v. Modern Erecting Co.,* 284 Minn. 508, 170 N.W.2d 865, 869 (1969); *Ekalo v. Constructive Service Corporation of America,* 46 N.J. 82, 215 A.2d 1, 6 (1965); *Nicholson v. Hugh Chatham Memorial Hospital, Inc.,* 300 N.C. 295, 266 S.E.2d 818, 823 (1980). Thus, our holding that a loss of consortium claim must be joined with the underlying tort claim whenever it is practicably feasible to do so is consistent with the traditional view that such a claim is derivative by nature and inextricably linked to the claim of the injured spouse. *See* 2 Dan B. Dobbs, *Law of Remedies* § 8.1(5) at 401 (2d ed. 1993) ("The traditional rule holds the consortium claim to be 'derivative,' so that it is lost, diminished or barred when the injured person's claim is so affected."); W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 125 at 938 (5th ed. 1984) ("Other courts have continued to follow the traditional view that the consortium claim is derivative and stands or falls with the main claim.").

█ Here, plaintiff was on notice of her right to assert a separate claim for loss of consortium throughout the pendency of both (1) her husband's claim against the alleged tortfeasor, Polis, and his insurer, Nationwide, which ended when Desjarlais accepted a settlement for the policy limits and (2) Desjarlais's claim seeking to recover UIM benefits from USAA, which ended in a final judgment confirming an arbitration panel's award in favor of USAA. While both claims were pending, however, plaintiff sat idly by, with knowledge of her husband's claims, while he was settling and arbitrating them. At no point did she assert her derivative claims before Desjarlais settled his personal-injury claims with Polis and Nationwide, much less did she seek to join these derivative claims with those of her husband. It was not until after her husband received an unfavorable arbitration award on his UIM claim that plaintiff first initiated her separate derivative claims against USAA—more than six years after the accident that caused her husband's injuries. But even then she failed to seek joinder of these claims to those of her husband before the Superior Court confirmed the arbitration award against him.

In *Buckley*, 659 N.Y.S.2d 841, 681 N.E.2d at 1288, the New York Court of Appeals was faced with a similar factual situation. In that case, after his wife settled her personal-injury claims against the alleged tortfeasor-defendant, the deprived spouse—there, the plaintiff husband—initiated a second lawsuit against this same defendant, attempting to prosecute his claim for loss of consortium separately. *See id.* The New York Court of Appeals held that because the husband's loss-of-consortium claim could have been joined with the wife's personal-injury claim before she settled with the defendant tortfeasor, her settlement release barred the deprived husband from initiating a separate suit for his derivative loss-of-consortium

claim. See *id.* at 1288, 1291. In so holding, that court reasoned that, because the plaintiff had " 'stood by throughout with full knowledge of' his wife's action," *id.* at 1290, he had to show why joinder of his loss-of-consortium claim with his wife's personal-injury claim was impossible, for reasons such as illness, disablement, or because his wife had executed the settlement release without his knowledge. See *id.* at 1291. Citing to comment g of Restatement (Second) *Torts* § 693, the *Buckley* court held that when joinder was possible, a deprived spouse who stood by with knowledge of the other spouse's assertion and prosecution of a personal-injury claim—yet still failed to join his or her derivative claim with that of the injured spouse before any settlement occurred—was thereafter barred from maintaining a separate action for loss of consortium. *See Buckley*, 659 N.Y.S.2d 841, 681 N.E.2d at 1291.

Here, plaintiff has not demonstrated that joinder of her loss-of-consortium claims with her husband's personal-injury and UIM claims was not feasible; much less does she argue that joinder was impossible under the circumstances. Indeed, her counsel has conceded that her failure to join these claims was the result of a mere "oversight." Rather, she suggests, because her claim constituted a separate cause of action, she should be allowed to maintain a later-filed separate lawsuit— provided she did so within the applicable statute of limitations. This argument, however, overlooks the fact that plaintiff's loss-of-consortium claim is strictly derivative and inextricably tied to the resolution of the impaired party's claims. *See Normandin*, 621 A.2d at 716; *Sama*, 569 A.2d at 433. Therefore, even though it qualifies as a separate claim, it is not independent of the underlying tort claim, but rather "inextricably linked" and "attached" to it.

*Normandin,* 621 A.2d at 716. Because plaintiff's claim is derivative of her husband's, "it is lost, diminished or barred when [her husband's] claim is so affected." Dobbs, § 8.1(5) at 401; Keeton, § 125 at 937–38; *see also Sama,* 569 A.2d at 433 (holding that a plaintiff's right to bring a loss-of-consortium claim depends on his or her spouse's ability to maintain their personal injury action).

According to her counsel, plaintiff, through an oversight, allowed her husband to settle his personal-injury claims and to submit his UIM claims against USAA to binding arbitration without first attempting to join her claim for loss of consortium and her children's claims for loss of society to these other claims. Because her husband already had arbitrated and resolved his underlying claim with respect to USAA by the time he filed this action, plaintiff was barred from maintaining her derivative claim in a later-filed independent action without any showing that joinder to her husband's claim was not feasible.[3] Because she made no such showing, the Superior Court properly granted summary judgment dismissing her claims.

**The Children's Loss–of–Society Claims**

Also at issue are the derivative claims for loss of society and parental companionship that plaintiff asserted as the parent and next friend of her two minor children. Pursuant to § 9–1–19, the statute of limitations for injuries incurred by minor chil-

dren tolls during their minority. *See Roe v. Gelineau,* 794 A.2d 476, 481 (R.I.2002). Nevertheless, the children's claims for loss of society remain derivative claims. *See Hodor,* 637 A.2d at 358; *see also Leonard,* at 1271–72 (reviewing our previous case law holding that loss of consortium and society claims remain derivative).

As a result, the highest courts in several other states also require that children's derivative claims for loss of society and parental companionship must be joined with a parent's underlying claims for personal injuries whenever it is feasible to do so. *See Villareal,* 774 P.2d at 220; *Weitl v. Moes,* 311 N.W.2d 259, 270 (Iowa 1981); *Hay v. Medical Center Hospital of Vermont,* 145 Vt. 533, 496 A.2d 939, 943 (1985); *Ueland,* 691 P.2d at 193–94. When a child, or another party as next friend of the child, seeks to bring a separate cause of action for loss of society or companionship, these courts require the plaintiff to demonstrate why joinder of the child's derivative claim with the underlying claims of the impaired party was not feasible. *See Villareal,* 774 P.2d at 220; *Weitl,* 311 N.W.2d at 270; *Hay,* 496 A.2d at 943; *Ueland,* 691 P.2d at 194; *see also* Steven William Gerse, *Compensating the Child's Loss of Parental Love, Care, and Affection,* 1983 U. Ill. L.Rev. 293, 315 (1983) (advocating that courts should require mandatory joinder of children's loss-of-society claims with their injured parent's underlying tort claim whenever feasible as a procedural safeguard to abate the possi-

---

**3.** As noted in the Restatement, situations can arise in which joinder is impossible under the circumstances:

"There will be situations in which it is not possible to join the causes of action for the single trial. Thus the impaired spouse's course of action may have been abated by death. * * * Or the impaired spouse may have settled and released the claim for bod-

ily harm without the knowledge of the deprived spouse. Or the impaired spouse may simply refuse to sue. There are no doubt other possible situations." Restatement (Second) *Torts* § 693, cmt. g at 498 (1977).

But no such circumstances existed in this case.

bility of duplicative litigation and to allay the danger of double recovery).

In this case, plaintiff does not argue that joining her children's derivative claims with her impaired husband's underlying claims was not feasible. Rather, as with her own loss-of-consortium claim, plaintiff merely suggests that her children's claims may be brought separately because they constitute separate causes of action. As was true for plaintiff's own claim, however, this argument ignores the fact that the loss-of-society claims plaintiff sought to bring on behalf of her minor children constitute derivative claims. As such, these claims are not independent of their father's personal-injury claim, but "stand[] or fall[]" with it. Keeton, § 125 at 938.

Because Desjarlais has settled his personal-injury claims against the alleged tortfeasor, Polis, as well as his insurer, Nationwide, and because Desjarlais unsuccessfully arbitrated his UIM claim against USAA—the confirmation of which award we recently affirmed in *Desjarlais I*—we hold that the plaintiff cannot now maintain a lawsuit for her children's derivative claims in a separate proceeding without showing that the joinder of these claims with Desjarlais's underlying claims was not feasible. The plaintiff has not alleged that any circumstances existed that prohibited her children's derivative claims from being joined with Desjarlais's initial tort claim or with his UIM claim. The mere fact that the limits of the tortfeasor's liability policy may have been insufficient to fully cover the alleged damages of all claimants does not excuse the failure of the deprived parties to join their derivative claims with the claims of the impaired party. As a result, the plaintiff's derivative claims on behalf of her children for their loss of society and companionship are also barred against this defendant.

## Conclusion

For these reasons, we deny the plaintiff's appeal and affirm the Superior Court judgment.

Justice FLAHERTY did not participate.