Maryann RACHAL et al.

v.

Mary O'NEIL et al.

No. 2006–135–A.

Supreme Court of Rhode Island.

June 15, 2007.

Kelly M. Fracassa, Esq., Westerly, for Plaintiff.

Matthew D. Rocheleau, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

If a twelve-year-old skateboarder "drops in" to a twelve-foot half pipe, the laws of physics tell us that he will reach a velocity of approximately 27.8 feet per second.[1] But if that youth tumbles off his skateboard almost instantly after beginning his descent and severely fractures an ankle, the laws of personal injury inevitably take over, and what follows is neither as speedy nor as scientifically precise.

Almost two years after Joseph Rachal's ill-fated foray into the half pipe at Skater's Island skate park, his parents (the Ra-chals) filed a complaint seeking redress for his injuries and for their own loss of consortium, as well. More than a year later, the Rachals sought to amend their complaint and add a defendant, but their motion to amend was rebuffed in Superior Court, notwithstanding G.L.1956 § 9–1–19, which tolls the statute of limitations on personal injury actions that accrue to minors until they turn eighteen.[2]

Maryann Rachal, on behalf of Joseph, now appeals from the denial of their motion to amend.[3] For the reasons set forth in this opinion, we vacate and reverse the order denying Joseph's motion to amend the complaint and add a party defendant.

Mrs. Rachal also appeals from the hearing justice's grant, in the alternative, of defendants' motion for summary judgment on the grounds of assumption of the risk. Although the hearing justice analyzed the evidence and the appropriate legal principles with some degree of cogency, we are of the opinion that the grant of summary judgment on the basis of assumption of the risk was procedurally improper. By the time the hearing justice reached this particular issue, he already had found each of the parties who stood to benefit from his alternative ruling not to be liable—findings that Mrs. Rachal does not contest. We therefore vacate the summary judgment granted in favor of defendants insofar as it is predicated on assumption of the risk.

---

1. Doctor Marc Richman, an engineer, provided this calculation as part of the expert testimony he prepared on behalf of the Rachals.

2. General Laws 1956 § 9–1–19 says, in relevant part:

"If any person at the time any such cause of action shall accrue to him or her shall be under the age of eighteen (18) years, * * * the person may bring the cause of action, within the time limited under this chapter, after the impediment is removed."

3. The notice of appeal identified the party filing the appeal as "Maryann Rachal, et al," but only one filing fee was paid. It is well settled that "[p]ursuant to Article 1, Rule 5(a) of the Supreme Court Rules of Appellate Procedure, every person appealing from a judgment in a civil case must pay a filing fee." *Illas v. Przybyla*, 850 A.2d 937, 943 (R.I.2004). In subsequent submissions, however, Mrs. Rachal clarifies that she appealed solely in her capacity as parent and next friend of her minor son.

## Facts and Procedural History

On November 9, 2002, Joseph Rachal (Joseph), under the supervision of his "aunt" [4] and in the company of a couple of friends, went skateboarding at Skater's Island in Middletown, Rhode Island. Skater's Island was an indoor recreational facility, replete with ramps, half pipes and other assorted apparatuses designed to delight skateboarding enthusiasts of all stripes. Joseph was twelve years old at the time; he had been skateboarding for roughly two years and, by his own assessment, he was "pretty good" at it. Joseph had been to Skater's Island before, and on this day, after riding for the better part of six hours, he decided that he was ready to try his hand at the twelve-foot half pipe. Having previously mastered ramps ranging from five to seven feet in height, Joseph was confident that he successfully could navigate the twelve-foot version at Skater's Island. There apparently were neither posted warnings nor watchful staffers there to caution young Joseph against undertaking the challenge. In his deposition, however, Joseph stated unequivocally that he fully understood the risks confronting him as he was perched twelve feet above the basin of the half pipe that day. In fact, he forthrightly asserted that he would have tested his skill on the half pipe even if someone had warned him against it. Unfortunately, when he did drop in, he lost his balance almost immediately and fell off his skateboard, fracturing his right tibia and fibula.

On October 4, 2004, Joseph's parents, Maryann and Joseph Rachal, Sr., filed suit in Newport County Superior Court against Mary O'Neil (O'Neil) individually and d/b/a Skater's Island, and Aram Dermanouelian (Dermanouelian) (collectively defendants) as the owner of the property. In their complaint, the Rachals alleged negligence and nuisance on behalf of their minor son, and they also sought damages for their own loss of consortium. Both defendants responded to the complaint, and in her answer O'Neil put the Rachals on notice that "Mary O'Neil d/b/a Skater's Island does not exist." Assumption of the risk was among the affirmative defenses O'Neil listed in her answer—as was a blanket assertion that "the Plaintiff's allegations against Skater Island may not be imputed to Mary O'Neil."

Upon learning that O'Neil had received a discharge in bankruptcy, the Rachals moved on November 14, 2005, to substitute her insurer as a defendant in the action. The defendants objected and also filed a cross-motion to dismiss the Rachals' nuisance claim and all claims against O'Neil, both individually and as "d/b/a Skater's Island." This prompted the Rachals to file a motion to amend on December 1, 2005, seeking to add Skater's Island, Inc. as a party defendant, and to substitute Virginia Surety Company for O'Neil.[5] The amended complaint also added counts for breach of contract and *res ipsa loquitur*. In response, defendants filed an objection to the motion to amend, and on December 23, 2005 they added a motion for summary judgment. In their motion for summary judgment, defendants contended that Joseph Rachal had assumed the risk of his

---

4. Although Joseph refers to his chaperone that day as his aunt, in her affidavit Maryann Rachal described the woman as the girlfriend of Joseph's uncle.

5. In their motion on November 14, 2005, the Rachals had sought to substitute K & K Insurance as a party in place of Mary O'Neil, but O'Neil's supplemental objection to that motion informed them that K & K Insurance was merely the claims administrator for Virginia Surety Company, O'Neil's actual insurer. Consequently, the Rachals moved to substitute Virginia Surety Company for O'Neil on December 1, 2005.

injuries. The defendants also asserted that Dermanouelian could not be held liable for Joseph's injuries because he was merely a commercial landlord who neither operated nor controlled the skate park.

On February 6, 2006, after entertaining the parties' respective arguments on all the aforementioned motions, the hearing justice concluded that Skater's Island was a corporation, "not a d/b/a," and that there was no basis for imputing any liability to Mary O'Neil individually. Further, because there were no allegations that she herself had committed a tort, he dismissed all claims against her. And because that dismissal effectively removed Mary O'Neil as a defendant, the hearing justice then denied the Rachals' motion to substitute Virginia Surety Company in place of Ms. O'Neil. The hearing justice next ruled, in effect, that because Joseph's parents had filed a complaint on his behalf, the tolling provision of § 9–1–19 did not apply; thus he also ruled that the motion before the court to amend and add Skater's Island, Inc. as a party was untimely. Further, he determined that the Rachals had failed to use due diligence in discovering the identity of Skater's Island, Inc., so their proposed amended complaint could not relate back to the original filing under Rule 15 of the Superior Court Rules of Civil Procedure. Additionally, the hearing justice held that Dermanouelian could not be liable for Joseph's injuries because he neither operated nor controlled the Skater's Island facility.

The hearing justice then made an alternative ruling, granting summary judgment in favor of defendants based on the affirmative defense of assumption of the risk. The hearing justice cited Joseph Rachal's deposition, in which the young man (he was fifteen by then) had testified that at the time of the accident, he had been aware of both the high speed he would

attain by dropping into the twelve-foot half pipe and the prospect that broken bones were a possible consequence if he were to fall. The hearing justice also noted Joseph's candid admission that he would have plunged into the half pipe even if someone specifically had warned him about the high velocity he would attain and the potentially bone-crunching impact of a fall. Observing that Joseph was an experienced skateboarder, the hearing justice ruled that his testimony trumped the conclusory statements offered in his mother's affidavit that Joseph was not old enough to adequately appreciate the danger. Although the hearing justice acknowledged that Joseph's relatively tender years merited some consideration in the assessment of the boy's subjective capacity to appreciate the risk, he ruled that youth alone is not sufficient to preclude a grant of summary judgment.

In an order dated February 9, 2006, the hearing justice (1) granted Mary O'Neil's cross-motion to dismiss all claims against her individually; (2) denied the Rachals' motion to substitute Virginia Surety Company for O'Neil; (3) denied the Rachals' motion to amend and add Skater's Island, Inc. as a defendant; and (4) granted the "Defendants' Motion for Summary Judgment." The grant of summary judgment included an explanatory note that "[e]ven if the Court had granted the Plaintiffs' Motion to Substitute Party and Motion to Amend Complaint and Add Parties, the Defendants' Motion for Summary Judgment would still be GRANTED." A separate judgment "in favor of the Defendants as to all claims" was entered the same day. Maryann Rachal timely filed a notice of appeal on behalf of her son Joseph.

On appeal, Mrs. Rachal argues that the fact that she and her husband filed suit on behalf of their minor son does not remove their son's claims from the safe harbor

provided by the tolling provision of § 9–1–19. Consequently, she contends that because they filed their motion to amend and add Skater's Island, Inc. as a party while their son was still a minor it was not untimely. Additionally, Mrs. Rachal asserts that the hearing justice erred in granting summary judgment to defendants based on assumption of the risk. She maintains that there are questions of fact about whether their young son was capable of truly appreciating the risks presented by the twelve-foot half pipe. Notably, Mrs. Rachal does not appeal from the judgment entered in favor of Ms. O'Neil and Mr. Dermanouelian, individually, nor from the denial of the motion to substitute Virginia Surety Company in place of O'Neil, nor from the judgment in favor of all defendants with respect to her derivative claim for loss of consortium.

## Standard of Review

It is well settled in Rhode Island that "[q]uestions of law * * *, including questions of statutory interpretation, are reviewed *de novo* by this Court." *Carnevale v. Dupee*, 783 A.2d 404, 408 (R.I.2001). It is equally certain that "[t]his Court reviews *de novo* a decision of the Superior Court to grant summary judgment, 'applying the same rules and standards as those employed by the justice' below." *Benaski v. Weinberg*, 899 A.2d 499, 502 (R.I.2006) (quoting *Roe v. Gelineau*, 794 A.2d 476, 481 (R.I.2002)).

## Discussion

### I

### Dismissal of the Rachals' Motion to Amend and Add Parties

In ruling on the Rachals' motion to amend and add Skater's Island, Inc. to their complaint, the hearing justice accurately identified the two applicable statutes, but in his subsequent formulation of

the question he deemed to be before the court he veered somewhat off course:

"[T]he plaintiffs claim that the statute of limitations has not expired as far as the claims of Joseph are concerned because he is a minor. Now General Law Section 9–1–19 and 9–1–14 read in conjunction provide that for personal injuries, the statute of limitations for bringing an action when the action accrues at an age of minority is three years from the age of 18. However, in this case the action had already been brought by the parents in their capacity as parents, next best friend and legal guardians of the minor. So the question before the Court is whether the statute of limitations begins to run upon the date of the injury or the date the action is commenced."

The inquiry as framed by the hearing justice, however, overlooked the more fundamental question of whether the statute of limitations on Joseph's claims remained tolled under § 9–1–19. It is our opinion that the tolling statute operates for the protection of the minor, and that the "impediment" of minority is not removed or waived by the filing of a next friend's suit. *Cf. Elgin v. Bartlett*, 994 P.2d 411, 415 (Colo.1999) ("a parent has no responsibility or discretion to institute a next friend lawsuit that removes or waives the child's legal disability"). On the contrary, the cause of action belongs to the minor, and the tolling provision obtains until he or she attains the age of eighteen years. As we previously have explained:

"The rationale for tolling the statute of limitations for a minor plaintiff is to safeguard the minor's right to bring civil actions that accrue during his or her minority until he or she reaches the age of majority, at which time the individual may decide whether to pursue such

claims." *Bouchard v. Price,* 694 A.2d 670, 672 (R.I.1997).

The persuasive authority from our sister jurisdictions overwhelmingly supports the Rachals' contention that the statute of limitations on Joseph's claims will not begin to run until his eighteenth birthday. *See Elgin,* 994 P.2d at 411; *Henry ex rel. Henry v. City of New York,* 94 N.Y.2d 275, 702 N.Y.S.2d 580, 724 N.E.2d 372 (1999); *Weaver v. Edwin Shaw Hospital,* 104 Ohio St.3d 390, 819 N.E.2d 1079 (2004); *Whitlow v. Board of Education of Kanawha County,* 190 W.Va. 223, 438 S.E.2d 15 (1993); *see also* Jean E. Maess, Annotation, *Tolling of State Statute of Limitations in Favor of One Commencing Action Despite Existing Disability,* 30 A.L.R.4th 1092 (1984).

Indeed, the following synopsis from a century-old Michigan decision encapsulates the prevailing wisdom on the disability of minority and the purpose of tolling statutes:

"It is evident that the disability mentioned in the [tolling] statute can have no other meaning than the infancy of the party, and it is not removed until the full period of his nonage shall elapse. The rule is well stated in Wood on Limitations (section 238) as follows: 'Persons who have not attained the age of majority are infants, and in those states where infancy is within the saving clause of the statute, the statute does not begin to run against him or her, even though he or she has a guardian who might sue the claim in question, * * * until he or she attains the age of majority. The fact that the guardian of an infant brings suit before the disability is removed does not operate as a waiver of disability.' " *Keating v. Michigan Cent. R. Co.,* 94 Mich. 219, 53 N.W. 1053, 1054 (1892).

As with virtually every rule, some exceptions have arisen over the years, but such exceptions are both narrow and few. Perhaps the most pervasive exception has been carved out by legislation comparable to Rhode Island's § 9–1–14.1, under which a parent or next friend's institution of a suit on behalf of a child for certain types of professional malpractice removes that child's malpractice claims from the protection a tolling statute would otherwise offer.[6] That said, with respect to claims not subject to an express statutory exception,[7] virtually every jurisdiction that has weighed in on the issue has consistently held that regardless of whether a parent/guardian brings a suit on a minor's

---

6. Section 9–1–14.1 reads, in relevant part:

"Notwithstanding the provisions of §§ 9–1–13 and 9–1–14, an action for medical, veterinarian, accounting, or insurance or real estate agent or broker malpractice shall be commenced within three (3) years from the time of the occurrence of the incident which gave rise to the action; provided, however, that:

(1) One who is under disability by reason of age, mental incompetence, or otherwise, and on whose behalf no action is brought within the period of three (3) years from the time of the occurrence of the incident, shall bring the action within three (3) years from the removal of the disability."

7. In addition to malpractice statutes, some other statutory anomalies neutralize general disability tolling statutes, such as in wrongful death actions, where there may be a "one suit" requirement allowing a qualified representative to bring suit on behalf of all parties entitled to recover, including minors, or when a guardian ad litem has been appointed for a child. *See Anderson v. R & D Foods, Inc.,* 913 So.2d 394 (Miss.Ct.App.2005) (re: wrongful death) and *Bryant v. Adams,* 116 N.C.App. 448, 448 S.E.2d 832 (1994) (re: guardian ad litem). As a point of clarification, we note that the Rachals filed suit here as their son's parents or "next friends"—they are not guardians ad litem. A guardian ad litem is "[a] guardian, usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." Black's Law Dictionary 725 (8th ed.2004).

behalf, the statute of limitations does not begin to run on the minor's personal injury claims until he/she attains the age of majority. *See* 30 A.L.R.4th at 1093.

The only two cases defendants have mustered to counter the majority position deal specifically with incarcerated adults who managed to file suit while in prison. In both instances, the prisoner/plaintiffs were denied the benefit of tolling statutes because the respective courts ruled that by virtue of filing their complaints, the prisoners had demonstrated their access to the courts. The first such case, *Johnson v. McLean*, 630 S.W.2d 790 (Tex.App.1982), came out of a Texas Court of Appeals, and the Texas Supreme Court subsequently went out of its way to pointedly and unequivocally limit the *Johnson* ruling to apply only to the disability of imprisonment, and *not* to the disability of minority:

> "Whatever validity may remain in *Johnson* as it applies to prisoners, the purpose and scope of the tolling provision, as applied to minors and persons of unsound mind, extends beyond merely ensuring their access to the courts. * * *
> "[W]e conclude that the mere commencement of a lawsuit by, or on behalf of, a legally incapacitated individual is, considered alone, insufficient to deny the protection of the tolling provision." *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 755, 756 (Tex.1993).

The other case touted by defendants, *White v. Murphy*, 789 F.2d 614 (8th Cir. 1986), has yet to be similarly constrained within its native Eighth Circuit, but as the Oregon Court of Appeals observed in *Luchini ex rel. Luchini v. Harsany*, 98 Or. App. 217, 779 P.2d 1053, 1056 (Ct.App. 1989), "[n]o other jurisdictions have followed Texas or the Eighth Circuit. The

majority continues to hold that the extension created for minors [by general disability tolling statutes] * * * is not terminated by the commencement of litigation by the representative."

Even if this Court were inclined to turn a deaf ear to the reverberating din of the tolling decisions that rings out with consistent pitch and clarity across the country, we still would be hard-pressed to harmonize the hearing justice's ruling here with an ensemble of Rhode Island decisions. The hearing justice ultimately predicated his rejection of the Rachals' motion to amend on his interpretation of two cases—*Bakalakis v. Women & Infants' Hospital*, 619 A.2d 1105 (R.I.1993) and *Dowd v. Rayner*, 655 A.2d 679 (R.I.1995)—that dealt exclusively with medical malpractice claims governed by § 9–1–14.1 rather than personal injury claims such as Joseph Rachal's, which unquestionably fall under § 9–1–14(b). While *Bakalakis* and *Dowd* may provide ample authority for limiting the impact § 9–1–19 has on the malpractice claims covered under § 9–1–14.1, those decisions offer absolutely no support for the notion that a minor's personal injury claims arising under § 9–1–14 suddenly should be subject to the same statutory strictures that the Legislature specifically and narrowly enacted to cover only claims for malpractice.

In fact, a close reading of *Bakalakis* and two earlier cases—*Bliven v. Wheeler*, 23 R.I. 379, 50 A. 644 (1901) and *Bishop v. Jaworski*, 524 A.2d 1102 (R.I.1987)—reveals that in the context of a personal injury claim under § 9–1–14(b),[8] the tolling provision of § 9–1–19 should remain in force regardless of whether (or when) a child's representative has filed suit on the

---

8. Section 9–1–14(b) reads as follows: "Actions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after."

child's behalf. In *Bliven*, this Court considered a cause of action with a six-year statute of limitations alongside a previous version of the tolling statute and held that a minor could bring suit through her next friend at any time before the minor reached the age of majority (twenty-one at the time), even if it had been more than six years since the accrual of her action:

> "If * * * the statute of limitations in this case extends the right of this infant plaintiff to sue until six years after she shall attain the age of twenty-one years, it is perfectly clear that an action, brought by her while she is still but eighteen years of age, is brought in good time, it having been brought several years earlier than it needed to have been." *Bliven*, 23 R.I. at 380, 50 A. at 644.

The *Bliven* decision deals with the initiation of a claim of "assumpsit * * * for services rendered" rather than a motion to amend a personal injury claim, but its logic nevertheless is instructive. *Id.* at 379, 50 A. at 644. Our holding in *Bliven* signaled this Court's approbation of a minor's right under a general disability tolling statute to press her claim at any time during the tolling period. *Id.* at 380, 50 A. at 644.

An examination of *Bishop* and *Bakalakis* provides additional impetus for an expansive application of § 9–1–19 to the personal injury claims of minors. In *Bishop*, this Court determined that § 9–1–19 tolled the three-year statute of limitations set out in § 9–1–25 for claims against the state:

> "Section 9–1–19 provides for tolling of statutes of limitation in general. Since the Legislature is presumed to know the law, and §§ 9–1–25 and 9–1–19 are contained within the same title and chapter of the General Laws, it seems likely that the Legislature intended § 9–1–19 to toll the § 9–1–25 statute of limitations. If the Legislature did not intend § 9–1–19

to affect § 9–1–25 it could have easily provided otherwise." *Bishop*, 524 A.2d at 1104.

The Legislature specifically removed certain malpractice claims from the reach of § 9–1–19 when it enacted § 9–1–14.1, but took no such steps to limit the impact of the tolling statute on claims brought under § 9–1–14. Again, there is no dispute that Joseph Rachal's claim is one for personal injuries.

Ultimately, it is *Bakalakis* that cements—albeit by implication—the reversal of the denial of the Rachals' motion to amend the complaint and add parties. Although this Court ruled in *Bakalakis* that the unique tolling paradigm set forth in § 9–1–14.1(a) trumps the general tolling provision of § 9–1–19, this Court's formulation of the threshold issue in *Bakalakis* gives rise to an unmistakable inference that *but for* the exception carved out by § 9–1–14.1(a), § 9–1–19 would allow the amendment of a minor's claim at any time before he/she turns twenty-one. *Bakalakis*, 619 A.2d at 1107.

In *Bakalakis*, 619 A.2d at 1106, two parents brought a medical malpractice claim on behalf of their infant son for alleged negligent care immediately after his birth, on December 18, 1984. The parents filed suit on December 16, 1987, and then, seeking to add two additional doctors as defendants, they filed a motion to amend their complaint on November 13, 1990. *Id.* For some reason, that motion never was heard, and a second motion to amend was heard and granted on April 19, 1991. *Id.* The new defendants filed a motion to dismiss, alleging, among other things, that the claims against them were untimely under § 9–1–14.1. *Bakalakis*, 619 A.2d at 1106. The trial justice denied the motion to dismiss, and defendants petitioned for review of the denial on writ of certiorari. *Id.*

■ After recognizing that the "main issue" in *Bakalakis* was "whether § 9–1–14.1(a) allows a minor to amend a pending complaint to include new defendants more than three years after occurrence of the incident that gave rise to the cause of action[,]" this Court also identified a "threshold issue" in the case: "The threshold issue before us * * * has not been addressed by this court previously. It is whether the general disability tolling statute, § 9–1–19, affects or in effect supersedes the provisions of § 9–1–14.1(a)." *Bakalakis*, 619 A.2d at 1106–07. In *Bakalakis*, we ultimately determined that it does not, and implicit in that holding is the notion that absent the limiting language of § 9–1–14.1, the parents would have been free to amend their infant's claim more than three years after his cause of action accrued. *Bakalakis*, 619 A.2d at 1107. And because § 9–1–14.1 applies only to certain malpractice claims, this Court's reasoning in *Bakalakis* leads to the inescapable conclusion that § 9–1–19 tolls the statute of limitations on Joseph Rachal's claims until his eighteenth birthday. Consequently, the statute of limitations remained tolled when the Rachals filed their motion to amend and add parties, so that motion could not have been untimely. The hearing justice erroneously imported the strictures of § 9–1–14.1 and applied them to a personal injury claim arising under § 9–1–14(b).

We hold, therefore, that under § 9–1–19 Joseph Rachal, whether on his own or through his parents, may amend his personal injury complaint and add Skater's Island, Inc. as a defendant.[9]

## II

### Summary Judgment/Assumption of the Risk

■ Mrs. Rachal also challenges the summary judgment entered in favor of both defendants but "only to the extent that it impacted the denial of her motion to amend to add Skater's Island, Inc., as a party." We agree and accordingly we vacate the judgment insofar as it is based on assumption of the risk. We do so, however, purely on procedural grounds, and we reach therefore neither the merits of the Rachals' case nor the substance of the hearing justice's ruling that Joseph Rachal assumed the risk of his injuries as a matter of law. It is well established that "[w]hether a plaintiff has assumed the risk of harm is generally a question for a trier of fact. * * * However, if only one rational inference can be drawn from the evidence on this issue, then the trial justice may treat the question as one of law." *D'Allesandro v. Tarro*, 842 A.2d 1063, 1067 (R.I.2004). In the instant case, even if summary judgment based on assumption of the risk were appropriate as a matter of law, as a matter of procedure it was not.

■ Although we value judicial economy and are chary of elevating form over substance, on the facts before us we conclude that the hearing justice's ruling that Joseph Rachal assumed the risk of his injuries, even though granted "in the alternative," was nevertheless issued in a vacu-

9. We note, however, that although Joseph is free to pursue his claims against Skater's Island, Inc., his claims against Mary O'Neil and Aram Dermanouelian remain foreclosed by operation of unchallenged final judgments of the Superior Court. The instant appeal does not question the judgment entered in favor of Ms. O'Neil and Mr. Dermanouelian, individually, so any further attempts by or on behalf of Joseph to proceed against those parties are precluded under the doctrine of *res judicata*. Because there is no such final judgment (nor a settlement) resolving Joseph Rachal's claims against Skater's Island, Inc., *res judicata* does not foreclose his personal injury claims against that particular party.

um. We can appreciate the hearing justice's desire to enlighten the parties on how he *would have* ruled on assumption of the risk had the issue been properly before him; indeed, this Court often indulges in a similar exercise—but when we do, our own musings, however informative, are nothing more than nonbinding dicta.[10] And in the case at bar, the fact remains that, from a procedural perspective, by the time the hearing justice ruled on assumption of the risk, the moving parties themselves no longer were at risk. Therefore, we hold that the hearing justice erred in granting the defendants summary judgment in the alternative based on assumption of the risk. The unchallenged grant of summary judgment in favor of Aram Dermanouelian based on his status as a commercial landlord, however, remains firmly intact.

### Conclusion

Accordingly, we vacate and reverse the order denying Joseph Rachal's motion to amend and add a party defendant, and we vacate the summary judgment granted in favor of the defendants insofar as it is predicated on assumption of the risk. We remand the papers in this case to the Superior Court.

---

10. Black's Law Dictionary, 1102 (8th ed.2004) defines *obiter dictum* as "A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive).—Often shortened to *dictum* or, less commonly, *obiter*. Pl. **obiter dicta**."