**Supreme Court**

No. 2012-208-Appeal.
No. 2012-211-Appeal.
(PC 10-4186)
(Dissent begins on page 20)

Jean Ho-Rath et al.                    :

v.                    :

Rhode Island Hospital et al.                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2012-208-Appeal.
No. 2012-211-Appeal.
(PC 10-4186)
(Dissent begins on page 20)

Jean Ho-Rath et al.            :

v.            :

Rhode Island Hospital et al.       :

Present: Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** This case requires us to answer two questions of

first impression relating to G.L. 1956 § 9-1-14.1(1),[1] which contains the statute of limitations for

the medical malpractice claims of minors. The plaintiffs, Jean and Bunsan Ho-Rath, initiated a

medical malpractice suit in 2010, twelve years after their daughter, Yendee, was born with a

genetic disorder. The plaintiffs brought suit on behalf of Yendee against numerous medical

organizations and professionals, alleging negligence in the diagnosis and treatment relating to

Yendee's genetic disorder. The plaintiffs also asserted their own claims for loss of consortium.

Certain defendants filed motions to dismiss, on the basis that plaintiffs' claims were

untimely pursuant to the applicable statute of limitations. The Superior Court granted

---

[1] General Laws 1956 § 9-1-14.1 provides in pertinent part as follows:
> "Notwithstanding the provisions of §§ 9-1-13 and 9-1-14, an action for medical * * * malpractice shall be commenced within three (3) years from the time of the occurrence of the incident which gave rise to the action; provided, however, that:
> "(1) One who is under disability by reason of age * * * and on whose behalf no action is brought within the period of three (3) years from the time of the occurrence of the incident, shall bring the action within three (3) years from the removal of the disability."

defendants' motions to dismiss, finding that all of plaintiffs' claims were barred by the statute of limitations set forth in § 9-1-14.1 because they were filed more than three years after the incident that gave rise to the cause of action. In light of Yendee's status as a minor, the hearing justice found that the tolling provision in § 9-1-14.1(1) would allow Yendee to file suit in the future on her own behalf upon reaching the age of majority. The hearing justice also concluded, however, that Yendee's parents would not be permitted to attach their loss-of-consortium claims to Yendee's future suit. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court granting defendants' motions to dismiss. As explained below, however, we disagree with the hearing justice's conclusion regarding the future loss-of-consortium claims of Yendee's parents.

## I

### Facts and Procedural History

This Court is familiar with the facts of this case, as pleaded in plaintiffs' amended complaint, from our recent decision, Ho-Rath v. Rhode Island Hospital, 89 A.3d 806 (R.I. 2014) (Ho-Rath I). Jean and Bunsan Ho-Rath are the parents of Yendee Ho-Rath, who was born on January 9, 1998. Yendee was born with alpha thalassemia, a genetic blood disorder. On July 16, 2010, when Yendee was twelve years old, Jean and Bunsan filed suit, per proxima amica Yendee, against numerous parties, including Rhode Island Hospital, Miriam Hospital, Women & Infants' Hospital of Rhode Island, and various associated medical professionals. The plaintiffs alleged negligence, lack of informed consent, corporate liability, and vicarious liability for injuries sustained by Yendee in connection with her genetic disorder. Jean and Bunsan also asserted individual claims against each of the defendants for the loss of consortium of Yendee. The plaintiffs alleged that, although genetic testing for thalassemia was conducted on Jean,

- 2 -

Bunsan, and Yendee's older brother as early as 1993, defendants had failed to correctly test, diagnose, and treat plaintiffs, resulting in Yendee being born with a debilitating genetic disorder. The plaintiffs filed an amended complaint on September 17, 2010, in which they added additional defendants, including Corning Incorporated (Corning) and Quest Diagnostics, LLC (Quest).

On February 8, 2011, Rhode Island Hospital, Miriam Hospital, and four associated medical professionals[2] (collectively, RIH defendants) moved pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure to dismiss Jean's and Bunsan's individual claims, on the ground that these claims were untimely according to the applicable statute of limitations set forth in § 9-1-14.1. On February 28, 2011, Women & Infants' Hospital of Rhode Island and three associated medical professionals[3] (collectively, W&I defendants) moved to dismiss plaintiffs' individual claims as well as those brought on behalf of Yendee, also on the ground that these claims were barred by § 9-1-14.1. Quest and Corning also filed motions to dismiss plaintiffs' claims, supported by the same reasoning.

The various motions to dismiss were heard together on June 27, 2011. The plaintiffs argued that, pursuant to § 9-1-14.1(1), Yendee's claims could be brought at any time until three years after she reached the age of majority. The plaintiffs further argued that their individual loss-of-consortium claims were derivative of Yendee's claims and that, therefore, they too were tolled pursuant to § 9-1-14.1(1). Regarding Corning and Quest, plaintiffs argued that the applicable statute of limitations for these claims was set forth in § 9-1-19 rather than § 9-1-14.1.

---

[2] These medical professionals are: Lewis Glasser, M.D., William Ferguson, M.D., Fred Schiffman, M.D., and B.E. Barker, Ph.D.
[3] These medical professionals are: Calvin E. Oyer, M.D., Jami Star, M.D., and Marsha Sverdup, M.S. f/k/a Marsha Pagnotto, M.S.

On July 7, 2011, the hearing justice issued a bench decision granting the motions to dismiss. The hearing justice first found that all of plaintiffs' claims sounded in medical malpractice and were thus subject to the applicable statute of limitations for medical malpractice claims set forth in § 9-1-14.1. The hearing justice determined that § 9-1-14.1(1) affords two options regarding the medical malpractice claims of injured minors. First, "an action may be commenced on behalf of the minor's interest by next of friend within three years of the injury or reasonable discovery of the injury." Alternatively, "the injured minor may commence an action on his or her own behalf within three years after reaching the [age of] majority." The hearing justice found that, because plaintiffs had brought their claims more than three years after the most recent occurrence of alleged malpractice, these claims were time-barred by § 9-1-14.1(1). The hearing justice also found, however, that because no action had been commenced on behalf of Yendee within three years of the incident that gave rise to the claims, Yendee retained the right to file suit on her own behalf after reaching the age of majority.

Final judgments were subsequently entered in favor of the W&I defendants, the RIH defendants, Corning, and Quest. The plaintiffs filed a timely notice of appeal; the W&I defendants, Quest, and Corning filed notices of cross-appeal. The four appeals were consolidated, and the matter was assigned to this Court's show-cause calendar. We issued an opinion on May 2, 2014, vacating the judgments entered in favor of Corning and Quest and assigning the remaining claims to this Court's plenary calendar for full briefing and argument. See Ho-Rath I, 89 A.3d at 812.[4] These remaining issues, concerning plaintiffs' direct and

---

[4] Regarding Corning and Quest, we held that the claims against these defendants sounded in ordinary negligence rather than medical malpractice and that, accordingly, the applicable statute of limitations was the one set forth in § 9-1-19 rather than in § 9-1-14.1. Ho-Rath v. Rhode Island Hospital, 89 A.3d 806, 812 (R.I. 2014) (Ho-Rath I).

derivative claims against the W&I defendants and the RIH defendants, form the substance of the instant opinion.

## II

### Standard of Review

"In reviewing the grant of a motion to dismiss pursuant to Rule 12(b)(6), this Court applies the same standard as the hearing justice." Woonsocket School Committee v. Chafee, 89 A.3d 778, 787 (R.I. 2014) (quoting Mendes v. Factor, 41 A.3d 994, 1000 (R.I. 2012)). "Because the sole function of a motion to dismiss is to test the sufficiency of the complaint, our review is confined to the four corners of that pleading." Id. (quoting Mendes, 41 A.3d at 1000). "We will 'assume[ ] the allegations contained in the complaint to be true and view[ ] the facts in the light most favorable to the plaintiffs.'" Id. (quoting Rhode Island Employment Security Alliance, Local 401, S.E.I.U., AFL–CIO v. State, Department of Employment and Training, 788 A.2d 465, 467 (R.I. 2002)). "A motion to dismiss is properly granted when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim." Id. (quoting Mendes, 41 A.3d at 1000).

"The question of whether a statute of limitations has run against a plaintiff's claim is * * * a question of law," which this Court reviews de novo. Balletta v. McHale, 823 A.2d 292, 294 (R.I. 2003) (quoting Hall v. Insurance Company of North America, 727 A.2d 667, 669-70 (R.I. 1999)). Additionally, "[t]his Court reviews questions of statutory construction and interpretation de novo." National Refrigeration, Inc. v. Capital Properties, Inc., 88 A.3d 1150, 1156 (R.I. 2014) (quoting Morel v. Napolitano, 64 A.3d 1176, 1179 (R.I. 2013)). It is well established that, "[w]hen the statutory language is clear and unambiguous, we give the words their plain and ordinary meaning." Id. (quoting Morel, 64 A.3d at 1179). "The plain meaning

approach, however, is not the equivalent of myopic literalism, and it is entirely proper for us to look to the sense and meaning fairly deducible from the context." Id. (quoting Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 425 (R.I. 2013)). We shall "consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." Id. (quoting Peloquin, 61 A.3d at 425). Ultimately, our goal "is to give effect to the purpose of the act as intended by the Legislature." Mendes, 41 A.3d at 1002 (quoting Generation Realty, LLC v. Catanzaro, 21 A.3d 253, 259 (R.I. 2011)). "[U]nder no circumstances will this Court construe a statute to reach an absurd result." National Refrigeration, Inc., 88 A.3d at 1156 (quoting Peloquin, 61 A.3d at 425).

### III

### Discussion

In Ho-Rath I, we identified the two issues of first impression that are currently before this Court for decision:

> "[W]hether, in accordance with § 9-1-14.1(1), medical malpractice claims may be brought on a child's behalf at any time before the minor reaches the age of majority, and thereafter by the child within three years after attaining the age of majority, or—as the lower court ruled—medical malpractice claims must be brought on behalf of a minor within three years of the incident giving rise to the cause of action, or within three years after attaining the age of majority—but at no time in between. The second question presented * * * is whether parents may bring their derivative claims at whatever time the minor's medical negligence claims are pursued, or whether—as the trial justice concluded—parents must file all derivative claims within three years of the incident giving rise to the cause of action, even if the child's claims are not brought until sometime thereafter." Ho-Rath I, 89 A.3d at 811.

We shall address each of these issues in turn.

## A

## Medical Malpractice Claims Brought on Behalf of Minors

Section 9-1-14.1, the statute at issue in this case, was enacted in 1976. See P.L. 1976, ch. 244, § 8. This statute provides the following with regard to the medical malpractice claims of minors:

> "[A]n action for medical * * * malpractice shall be commenced within three (3) years from the time of the occurrence of the incident which gave rise to the action; provided, however, that:
> "(1) One who is under disability by reason of age * * * and on whose behalf no action is brought within the period of three (3) years from the time of the occurrence of the incident, shall bring the action within three (3) years from the removal of the disability." Section 9-1-14.1.

Also contained in chapter one of title nine of the General Laws is the general provision for the tolling of statutes of limitation for the personal injury claims of minors, which has been in existence, without significant change, for over one hundred years. See § 9-1-19; Bliven v. Wheeler, 23 R.I. 379, 380, 50 A. 644, 644 (1901). Section 9-1-19 provides in pertinent part: "If any person at the time any such cause of action shall accrue to him or her shall be under the age of eighteen (18) years, * * * the person may bring the cause of action, within the time limited under this chapter, after the impediment is removed." This Court has previously held that § 9-1-19 "operates for the protection of the minor" and that "the tolling provision obtains until he or she attains the age of eighteen years." Rachal v. O'Neil, 925 A.2d 920, 924 (R.I. 2007). Thus, pursuant to § 9-1-19, a suit may be brought on behalf of a minor plaintiff in a personal injury action at any time until the minor reaches the age of majority, after which time the minor has

three years to file suit on his or her own behalf.[5] See Bishop v. Jaworski, 524 A.2d 1102, 1102-03, 1104 (R.I. 1987); Bliven, 23 R.I. at 380, 50 A. at 644.

On appeal, plaintiffs argue that § 9-1-14.1(1) should also be interpreted to allow a tolling of the statute of limitations for malpractice claims until a minor's eighteenth birthday. According to plaintiffs, "[t]he tolling provision of * * * § 9-1-14.1(1) identifies the maximum time limit on filing a minor's claim for professional malpractice." The plaintiffs further allege that "[n]othing in the statute states that a minor is required to wait until the 'disability' of age is removed prior to filing a lawsuit." Thus, according to plaintiffs, § 9-1-14.1(1) allows a medical malpractice claim to be brought on behalf of a minor at any time before the minor reaches the age of majority, after which time the minor has three years to file suit on his or her own behalf. The plaintiffs therefore believe that their suit was timely because, although the suit was not filed within three years of the incident that gave rise to the claims, it was filed before Yendee reached the age of twenty-one.[6]

The W&I defendants, on the other hand, argue that § 9-1-14.1 provides a limitation on the general tolling provision of § 9-1-19, and that this limitation requires any suit on a minor's behalf to be brought within three years of the incident giving rise to the claims. According to the W&I defendants, plaintiffs' proposed interpretation of § 9-1-14.1(1) renders it identical to § 9-1-19 by allowing a minor's suit to be brought at any time until he or she reaches the age of twenty-one. The W&I defendants further argue that, because Yendee's parents brought a claim on her behalf more than three years after the alleged incident, "she is no longer entitled to take

---

[5] Pursuant to § 9-1-14(b), the statute of limitations for personal injury claims is three years.
[6] The plaintiffs do not dispute that this lawsuit was filed more than three years after the alleged occurrence of malpractice, nor do they contend that the discovery rule applies to their case. See § 9-1-14.1(2).

advantage of the tolling provision in § 9-1-14.1" and is, therefore, precluded "from being able to bring a claim on her own behalf after she reaches the age of majority * * * ."

We believe that the language of § 9-1-14.1(1) is clear and leads to only one rational result; nevertheless, we shall indulge in a brief analysis of this Court's relevant precedent and the historical context of the statute in order to provide a backdrop for the holding that we adopt today. This Court's most informative case to date regarding § 9-1-14.1(1) is Bakalakis v. Women & Infants' Hospital, 619 A.2d 1105 (R.I. 1993). In that case, parents filed suit against medical professionals alleging negligent care at the time of the birth of their son. Id. at 1106. The suit was filed within three years of the son's birth. Id. Subsequently, more than three years after the birth, the plaintiffs moved to amend their complaint to add two additional doctors as defendants. Id.

The central issue before this Court in Bakalakis was "whether § 9-1-14.1(a)[7] allows a minor to amend a pending complaint to include new defendants more than three years after occurrence of the incident that gave rise to the cause of action." Bakalakis, 619 A.2d at 1106. In order to reach this issue, however, we had to answer the threshold question of "whether the general disability tolling statute, § 9-1-19, affects or in effect supersedes the provisions of § 9-1-14.1(a)." Bakalakis, 619 A.2d at 1107. We held that, because the Legislature had not been silent, it had not intended § 9-1-19 to supersede § 9-1-14.1(a).[8] Bakalakis, 619 A.2d at 1107. Next, regarding § 9-1-14.1(a), we opined:

---

[7] The portion of the statute previously set forth in subsection (a) of § 9-1-14.1 is now set forth, in nearly identical fashion, in subsection (1). See Bakalakis v. Women & Infants' Hospital, 619 A.2d 1105, 1106-07 (R.I. 1993) (citing § 9-1-14.1(a)); see also § 9-1-14.1(1).

[8] Specifically, we discussed the holding in Bishop v. Jaworski, 524 A.2d 1102 (R.I. 1987), a case that was factually analogous to Bakalakis, in which this Court addressed the issue of whether the statute of limitations for bringing an action against the state pursuant to § 9-1-25 is tolled during a child's minority. Bakalakis, 619 A.2d at 1107. Unlike § 9-1-14.1, § 9-1-25 does not address

"The plain language suggests that if no action on behalf of one who is under a disability is brought within three years of the occurrence of the incident, then the statute of limitations is tolled until the maximum of three years after the disability is removed. It would also follow, then, that if an action is brought within three years of the occurrence of the incident, the minor does not benefit from the tolling of the provision once the disability is removed. It appears to us that if the Legislature did not intend to limit a minor's ability to initiate medical malpractice actions, subsection (a) of § 9-1-14.1 would be unnecessary." Bakalakis, 619 A.2d at 1107.

The plaintiffs in Bakalakis argued that § 9-1-14.1 did not preclude the addition of the proposed two doctor defendants more than three years after the incident because no other action had been filed against these particular defendants; the plaintiffs maintained that these doctors could have been sued at any time until three years after the removal of the minor's disability. Bakalakis, 619 A.2d at 1107. We rejected this argument, noting that "the language in [§ 9-1-14.1(a)] is plain and compelling, and, to hold otherwise would bring about the unwelcome situation where the action brought within the three-year period would be merely preliminary to the main event when the minor brought suit on his or her own behalf." Bakalakis, 619 A.2d at 1107. Thus, Bakalakis stands for the following two propositions: (1) § 9-1-14.1(1) is not superseded by § 9-1-19 and is, therefore, the only statute of limitations applicable to medical

---

the effects of any disabilities on the time periods set forth for bringing actions against the state. Bakalakis, 619 A.2d at 1107. We quoted this Court's previous holding:

"Section 9-1-19 provides for tolling of statutes of limitation in general. Since the Legislature is presumed to know the law, and §§ 9-1-25 and 9-1-19 are contained within the same title and chapter of the General Laws, it seems likely that the Legislature intended § 9-1-19 to toll the § 9-1-25 statute of limitations. If the Legislature did not intend § 9-1-19 to affect § 9-1-25 it could have easily provided otherwise." Bakalakis, 619 A.2d at 1107 (quoting Bishop, 524 A.2d at 1104).

We reasoned that, because the Legislature had not been silent in the instant situation—it had enacted the tolling provision in § 9-1-14.1(a)—it did not intend § 9-1-19 to supersede § 9-1-14.1. Bakalakis, 619 A.2d at 1107.

malpractice actions; and (2) if a suit is filed on behalf of a minor plaintiff within three years of the alleged occurrence of malpractice, the plaintiff may not then add additional defendants after that three-year period has expired. Bakalakis, 619 A.2d at 1107.

After this Court decided Bakalakis, we commented on the legislative purpose behind § 9-1-14.1 in Dowd v. Rayner, 655 A.2d 679 (R.I. 1995):

> "Section 9-1-14.1 was enacted in 1976 * * * as a legislative response to a medical malpractice crisis in the state. * * * Faced with the crisis, the Legislature had legitimate interests in limiting the number of medical malpractice suits but, at the same time, in providing victims of medical malpractice with a fair opportunity to have their claims adjudicated in the courts. In the case of minors on whose behalf suit has not been brought within three years of the alleged malpractice, § 9-1-14.1 permits such individuals up to three years after reaching the age of majority to initiate a suit. This provision ensures that minors are not disadvantaged by their disability during minority. * * * The rational purpose of this provision is the restriction of multiple suits or amended complaints filed against additional defendants on a serial or piecemeal basis. * * * [T]he limitation applies only in cases where a suit has been brought on behalf of the minor." Dowd, 655 A.2d at 681-82.

More recently, in Rachal, we reaffirmed that § 9-1-14.1(1) is a legislatively carved-out exception to the general tolling provision for minors contained in § 9-1-19; under § 9-1-14.1(1), "a parent or next friend's institution of a suit on behalf of a child for certain types of professional malpractice removes that child's malpractice claims from the protection a tolling statute would otherwise offer." Rachal, 925 A.2d at 925. We further recognized that "[t]he Legislature specifically removed certain malpractice claims from the reach of § 9-1-19 when it enacted § 9-1-14.1 * * *." Rachal, 925 A.2d at 927. Thus, it is clear from our precedent that § 9-1-14.1(1) was intended to streamline the litigation of medical malpractice cases involving minors, and that this statute acts as a limitation on the general tolling provision for minors set forth in § 9-1-19.

With this background in mind, we now hold that § 9-1-14.1(1) provides a minor plaintiff in a medical malpractice action with two options. First, the minor's parent or guardian may file suit on the minor's behalf within three years of the occurrence or reasonable discovery of alleged malpractice. Alternatively, if the minor's parent or guardian fails to file suit on the minor's behalf within those three years, then the minor may file suit on his or her own behalf, but not until he or she reaches the age of majority. Upon reaching the age of majority, he or she has three years within which to file the action.

In our opinion, this holding is consistent with the clear language of § 9-1-14.1(1), as well as with the well-established principle of statutory construction that we "presume[] that the General Assembly intended every word of a statute to have a useful purpose and to have some force and effect." Peloquin, 61 A.3d at 425 (quoting Curtis v. State, 996 A.2d 601, 604 (R.I. 2010)). If we were to interpret § 9-1-14.1(1) to allow a minor plaintiff to have a suit brought on his or her behalf at any time through reaching the age of majority, there would have been no need to include the language "on whose behalf no action is brought within the period of three (3) years from the time of the occurrence of the incident." Section 9-1-14.1(1). Pursuant to plaintiffs' proposed interpretation, this three-year period would be functionally meaningless; a parent or guardian could file suit on the minor's behalf at any time until the child reaches the age of majority.[9]

Furthermore, our holding is consistent with this Court's precedent relating to § 9-1-14.1(1), as well as with the legislative landscape as it existed when this statute was enacted. As

---

[9] In an apparent effort to contend with our holding in Bakalakis, 619 A.2d at 1107, plaintiffs assert that § 9-1-14.1(1) does act as a limitation on § 9-1-19, but only in the sense that when a suit is brought on behalf of a minor, the minor's claims do not continue to toll for the purpose of adding new defendants. We do not see how this interpretation could reasonably be extracted from the language of § 9-1-14.1(1).

explained above, we have held unequivocally that § 9-1-14.1(1) acts as a limitation on the general tolling statute contained in § 9-1-19. See Rachal, 925 A.2d at 925; Bakalakis, 619 A.2d at 1107. Indeed, if the Legislature had intended § 9-1-14.1(1) to toll the statute of limitations on a minor's malpractice claim until he or she reached the age of majority, then this provision would be functionally identical to § 9-1-19, which already accomplishes the same result in a general manner for personal injury actions. When § 9-1-14.1 was enacted in 1976, the general tolling provision for the claims of minors set forth in § 9-1-19 was a longstanding, well-established law.[10] See, e.g., Bliven, 23 R.I. at 380, 50 A. at 644. Moreover, as explained in Dowd, 655 A.2d at 681-82, the Legislature was especially concerned during this time period with limiting and streamlining medical malpractice litigation. Given this context, we have no doubt that § 9-1-14.1(1) was intended to be "an express statutory exception" to § 9-1-19 rather than a mere redundancy. Rachal, 925 A.2d at 925.

Additionally, we are of the opinion that our present construction of § 9-1-14.1(1) provides the most sensible result in light of the dual purposes of this statute: to "promote certainty and finality and avoid stale claims," while also "provid[ing] temporary shelter from those limitations for plaintiffs who cannot protect their legal rights while under certain impediments." Roe v. Gelineau, 794 A.2d 476, 485 (R.I. 2002). The initial three-year statute of limitations in § 9-1-14.1(1) encourages the minor's parent or guardian to file suit promptly upon the occurrence or reasonable discovery of alleged malpractice; this restraint serves the purpose of

---

[10] In 1976, § 9-1-19 was substantively identical to its current iteration, except that the age of majority has since been changed from twenty-one years to eighteen years. See § 9-1-19 and reenactments of 1956 and 1985. Section 9-1-14.1(1) has also not been substantially altered since its enactment in 1976, save for changing the limitation period from two years to three, removing a provision that deemed the minor free from disability at age sixteen, and expanding the provision's reach from solely medical malpractice to include legal, veterinarian, accounting, and insurance or real estate agent or broker malpractice as well. See P.L. 1988, ch. 392, § 1; P.L. 1984, ch. 236, § 1; P.L. 1981, ch. 101, § 2; P.L. 1976, ch. 244, § 8.

providing a fair but appropriately limited opportunity for the litigation of the minor's claims. If the parent or guardian fails to file suit on the minor's behalf, however, the three-year window opens upon the age of majority; this ensures that the minor is not permanently prejudiced by his or her parent or guardian's failure to timely assert his or her rights.

Accordingly, we affirm the hearing justice's decision granting defendants' motions to dismiss plaintiffs' claims brought on behalf of Yendee. We also agree with the hearing justice that Yendee may file suit on her own behalf after she attains majority. Pursuant to the plain language of § 9-1-14.1(1), Yendee is a minor "on whose behalf no action [was] brought within the period of three (3) years from the time of the occurrence of the incident." Therefore, she retains the benefit of the tolling statute, which allows her to file suit on her own behalf upon reaching the age of majority.

**B**

**Loss-of-Consortium Claims of Parents**

In addition to the claims brought on behalf of Yendee, Jean and Bunsan have also asserted claims on their own behalves, for "the loss of services, companionship, comfort and consortium" of Yendee. The hearing justice dismissed these claims with prejudice on the ground that they had not been asserted within three years of the incident giving rise to the cause of action. On appeal, plaintiffs argue that their individual claims are derivative of the claims brought on behalf of Yendee and that, accordingly, the applicable statute of limitations is the same statute that applies to Yendee's claims—§ 9-1-14.1(1). Thus, plaintiffs argue, their individual claims should receive the benefit of the tolling statute and should not be dismissed.

The RIH defendants also assert that plaintiffs' individual claims are governed by the statute of limitations set forth in § 9-1-14.1(1), but they argue that these claims were nevertheless

- 14 -

untimely because they were brought more than three years after the alleged occurrence of malpractice. According to the RIH defendants, "§ 9-1-14.1 applies to both Yendee's and the Ho-Rath Parents' claims, but with different results." The RIH defendants assert that Yendee "can claim the benefit of an extended statute of limitations as set forth in [§ 9-1-14.1(1)]" because she is under a disability due to her age; Yendee's parents, however, cannot claim this same benefit because they are not under a disability. The RIH defendants maintain that loss-of-consortium claims are "separate and distinct" from the underlying tort claims and that, accordingly, they must be analyzed separately for purposes of the statute of limitations.

The W&I defendants, for their part, also argue that plaintiffs' individual claims are not tolled by § 9-1-14.1(1). The W&I defendants explain that because Jean and Bunsan are not disabled, they are "specifically excluded from the protected class of individuals by the clear language of the statute." Thus, the W&I defendants assert that for Jean's and Bunsan's individual claims to have been brought properly, they would have had to file suit on Yendee's behalf, with their individual claims included, within three years of the alleged occurrence of malpractice. According to the W&I defendants, "[a]pplying a tolling provision that was intended to be used only by minors to adults is contrary to the explicit purpose of the tolling provision and allows stale claims to be litigated when adults have no impediment to bringing the claims at an earlier time."

Pursuant to § 9-1-41, parents are permitted to recover damages for the loss of consortium of a minor child caused by tortious injury. This statute provides in pertinent part:

> "(c) Parents are entitled to recover damages for the loss of their unemancipated minor child's society and companionship caused by tortious injury to the minor.
> "(d) Actions under this section shall be brought within the time limited under § 9-1-14 or 9-1-14.1, whichever is applicable, for actions for injuries to the person." Section 9-1-41.

- 15 -

Thus, it is clear—in a general sense—that Jean and Bunsan were entitled to assert claims for the loss of Yendee's consortium, and that these claims are governed by the three-year statute of limitations for medical malpractice actions set forth in § 9-1-14.1. What is not clear, however, is whether the tolling provision in § 9-1-14.1(1) applies to the parents' individual loss-of-consortium claims as well as to the claims brought on behalf of Yendee. This Court has yet to resolve the specific issue raised in this case: whether, in a malpractice case, a parent's loss-of-consortium claim concerning an injured minor child must be brought within three years of the incident giving rise to the cause of action; or, in the event that no suit is filed within three years, whether the parent's loss-of-consortium claim can be brought alongside the child's own claim within three years after the child reaches the age of majority.

A brief exploration of our relevant precedent provides useful guidance in resolving this question. In Sama v. Cardi Corp., 569 A.2d 432, 433 (R.I. 1990), this Court held that the enactment of § 9-1-41 did not alter the common-law rule that loss-of-consortium claims are derivative in nature and depend on the underlying injured party's right to recover. We held:

> "[A]n action for loss of consortium under § 9-1-41, although a separate cause of action * * * , is not an independent action but a derivative one that is attached to the claim of the injured spouse. It arises from the injured spouse's physical injury and is dependent upon the success of the underlying tort claim." Sama, 569 A.2d at 433.

We have since reiterated this holding in numerous cases. See, e.g., Malinou v. Miriam Hospital, 24 A.3d 497, 511-12 (R.I. 2011) ("[A] claim for loss of society and companionship depends on the injured party's ability to recover in a claim against the same defendant."); Fiorenzano v. Lima, 982 A.2d 585, 591 (R.I. 2009) ("A claim for loss of consortium by a spouse or parent or child depends on the injured party's ability to recover in a claim against the same defendant; the

claim remains essentially inchoate until the injured party in fact recovers."); Desjarlais v. USAA

Insurance Co., 824 A.2d 1272, 1277 (R.I. 2003) (Loss-of-consortium claims "are inextricably

linked to the underlying claims because their success depends on the success of those underlying

claims."); Normandin v. Levine, 621 A.2d 713, 716 (R.I. 1993) (Loss-of-consortium claims are

"derivative in nature and inextricably linked to the injured spouse's action.").

In Normandin, 621 A.2d at 714-15, this Court addressed the issue of whether an adult

plaintiff in a personal injury case could "amend his timely filed complaint to add his spouse's

loss-of-consortium claim" after the three-year statute of limitations for his own claim had

expired. In declining to allow this amendment, we explained:

> "Although [a loss-of-consortium] claim is derivative in nature and
> inextricably linked to the injured spouse's action, * * * each
> spouse maintains an entirely unique cause of action under the law
> and the assertion of one spouse's right within the statutory period
> of limitations will not excuse the failure of the other spouse to
> assert within the statute of limitations his or her own separate
> right." Id. at 716.

Thus, we held that the uninjured spouse was not permitted to join her claims to the lawsuit after

the expiration of the three-year limitation period for the injured spouse's claim. Id.; see also

Balletta, 823 A.2d at 295 (same); Soares v. Ann & Hope of Rhode Island, Inc., 637 A.2d 339,

353 (R.I. 1994) (same).

More recently, in Desjarlais, 824 A.2d at 1278, this Court addressed the important issue

of whether loss-of-consortium claims must be joined to the principal dispute. We noted that,

"though they constitute separate and distinct claims, loss-of-consortium and loss-of-society

claims still are subject to the applicable statutes of limitation for the impaired party's underlying

claims. Indeed, they are inextricably linked to the underlying claims because their success

depends on the success of those underlying claims." Id. at 1277. We opted to join the "growing

number of jurisdictions" that "refused to permit a separate action for loss of consortium and require[d] joinder of the consortium claims with the principal dispute * * * ." Id. at 1278 (quoting Leonard v. McDowell, 824 A.2d 1266, 1272 (R.I. 2003)). We found persuasive as a rationale "the desire to avoid duplicative litigation—obviating the need for a party * * * to defend against the same basic claim twice or thrice over—and thereby reducing the risk of multiple recoveries and inconsistent results." Id.

Accordingly, in Desjarlais we held that derivative loss-of-consortium claims must be joined with the underlying claims of the injured party, unless the derivative claimants can demonstrate that joinder was not feasible under the circumstances.[11] Desjarlais, 824 A.2d at 1278. We also extended this holding to encompass a child's claim for the loss of consortium of a parent; recognizing that, although § 9-1-19 tolls the statute of limitations for injuries incurred by minor children, "the children's claims for loss of society remain derivative claims." Desjarlais, 824 A.2d at 1281. Thus, we held that a child's claim for loss of consortium could not be maintained in a separate lawsuit absent a showing that joinder with the underlying claim was not feasible. Id. at 1282.

In our opinion, it follows from this Court's precedent and from the language of § 9-1-41(d) that a parent's claim for loss of consortium in a medical malpractice case should be tolled alongside the minor's claim from which it is derived. Our precedent regarding parents' loss-of-consortium claims clearly establishes that these claims are derivative in nature and must be joined with the child's claims if it is feasible to do so. See Desjarlais, 824 A.2d at 1278; Sama, 569 A.2d at 433. The sound rationale for this joinder rule is to prevent duplicative litigation,

---

[11] Additionally, we held that "[t]his requirement of mandatory joinder recognizes that family members asserting derivative claims for loss of consortium, society, or companionship constitute 'persons needed for just adjudication' within the scope of Rule 19 [of the Superior Court Rules of Civil Procedure]." Desjarlais v. USAA Insurance Co., 824 A.2d 1272, 1278 (R.I. 2003).

multiple recoveries, and inconsistent results. <u>Desjarlais</u>, 824 A.2d at 1278. Consistent with this reasoning, we are of the opinion that § 9-1-41(d) exhibits an intent to apply to derivative claims the statute of limitations for the underlying injury. In the instant case, Yendee's claims are tolled pursuant to § 9-1-14.1(1); thus, her parents' derivative claims are tolled as well.

This holding is in harmony with the various policy interests at play in the realm of minors' medical malpractice claims, as discussed in more detail above. Pursuant to § 9-1-14.1(1) and <u>Desjarlais</u>, 824 A.2d at 1277, the parents of an injured minor are encouraged to bring suit—direct and derivative claims included—within three years of the minor's injury. In the event that the parents fail to file a timely suit, ownership of the underlying claim shifts to the injured party upon reaching the age of majority. Although the parents retain the right to append their derivative claims to the injured party's action, they no longer possess control over the underlying claim. Thus, the tolling provision in § 9-1-14.1(1) remains in existence for the sole benefit of the injured minor; but, because the loss-of-consortium claims are dependent upon the minor's underlying claims, the parents are permitted to avail themselves of the benefit of the statutory tolling period.[12]

Furthermore, this conclusion is consistent with our holding in <u>Normandin</u>, in which we established that the timeliness of a loss-of-consortium claim does not rise and fall solely on the timeliness of the underlying claim. <u>See</u> <u>Normandin</u>, 621 A.2d at 716. Hypothetically speaking, if Jean and Bunsan choose to append their derivative claims to Yendee's future direct suit, assuming she elects to bring suit within three years after reaching the age of majority, their claims will be timely. The reason for this timeliness, however, will not be that the parents'

---

[12] Moreover, allowing the parents to pursue their claims alongside the minor's claims imposes no additional prejudice on the defendants, who should already be prepared to defend against a potential suit brought by the minor upon reaching the age of majority.

claims were appended to Yendee's timely suit; rather, the claims will be timely because the applicable statute of limitations, set forth in § 9-1-14.1(1), allows the claims to be filed within three years after the removal of Yendee's disability.

Accordingly, we affirm the dismissal of Jean's and Bunsan's loss-of-consortium claims, but we disagree with the hearing justice's conclusion that these claims cannot be brought at a later time along with Yendee's claims. The parents' derivative claims may be asserted alongside Yendee's claims if she elects to file suit upon reaching the age of majority.

## IV

### Conclusion

For the reasons set forth above, we affirm the judgment of the Superior Court. The record of this case shall be returned to the Superior Court.

Justice Goldberg did not participate.

**Justice Flaherty, dissenting.** I respectfully dissent from that portion of the majority's opinion that holds that the plaintiffs, Jean and Bunsan Ho-Rath, are precluded from bringing a lawsuit on behalf of their minor daughter, Yendee, and that Yendee must wait until she reaches the age of eighteen to file suit for the medical negligence that she alleges she suffered at the hands of the defendants. I do not agree with the majority that the statute is clear and unambiguous. In my opinion, G.L. 1956 § 9-1-14.1(1) can be fairly read as either: (1) prohibiting, until he or she reaches the age of majority, the initiation of a lawsuit by a minor on whose behalf no suit has been brought within three years of the incident giving rise to the claim,

as the majority construes it, or, (2) as setting an outside limit for the initiation of such an action.[1]

It is well settled that, if a statute can be reasonably read in more than one way, it is ambiguous, and the intent and purpose of the Legislature in enacting the statute must be divined. See Harvard Pilgrim Health Care of New England, Inc. v. Rossi, 847 A.2d 286, 290 (R.I. 2004) (quoting Direct Action for Rights and Equality v. Gannon, 819 A.2d 651, 659 (R.I. 2003) ("When a statute is ambiguous, however, we must apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature.")). In arriving at its conclusion, the majority leans heavily on three prior decisions of this Court: Rachal v. O'Neil, 925 A.2d 920, 924 (R.I. 2007); Dowd v. Rayner, 655 A.2d 679, 681-82 (R.I. 1995); and Bakalakis v. Women & Infants' Hospital, 619 A.2d 1105, 1106 (R.I. 1993). However, in my view, none of these cases reaches the precise issue that we decide today.

In Bakalakis, 619 A.2d at 1106, unlike the present case, the plaintiffs did initiate suit prior to the expiration of the three-year clock. But then, while the lawsuit was ongoing, and after more than three years had passed from the alleged malpractice, the plaintiffs attempted to amend the complaint by adding new defendants. Id. On appeal, this Court framed the issue presented as "whether § 9-1-14.1[(1)] allows a minor to amend a pending complaint to include new defendants more than three years after occurrence of the incident that gave rise to the cause of action." Bakalakis, 619 A.2d at 1106. Relying on the language of § 9-1-14.1, this Court held

---

[1] General Laws 1956 § 9-1-14.1 reads in pertinent part:

"[A]n action for medical * * * malpractice shall be commenced within three (3) years from the time of the occurrence of the incident which gave rise to the action; provided, however, that:
    "(1) One who is under disability by reason of age, mental incompetence, or otherwise, and on whose behalf no action is brought within the period of three (3) years from the time of the occurrence of the incident, shall bring the action within three (3) years from the removal of the disability."

- 21 -

that adding new defendants was not permissible and "to hold otherwise would bring about the unwelcome situation where the action brought within the three-year period would be merely preliminary to the main event * * * ." Bakalakis, 619 A.2d at 1107. It is my view that Bakalakis stands for the proposition that, if a parent or guardian has filed suit within three years, he or she has effectively asserted the minor's rights, and, in the interest of bringing forth all claims in a timely manner, no amendments naming new defendants can be made after that three-year limit has passed. Here, because the minor Yendee Ho-Rath's rights were not exercised by her parents within three years, the statute's tolling provision should apply, a fact that Bakalakis acknowledges. Id. ("if no action on behalf of one who is under a disability is brought within three years of the occurrence of the incident, then the statute of limitations is tolled").

In Rachal, 925 A.2d at 921, an entirely different scenario presented itself. There, an injured minor plaintiff attempted to add a defendant to a pending lawsuit for personal injury. Id. Citing Bakalakis, a justice of the Superior Court denied the plaintiff's motion to amend the complaint and granted summary judgment for the defendant. Id. at 923, 926. However, we vacated that judgment because the plaintiff's claims did not sound in medical malpractice. Id. at 928. The Court reasoned that because § 9-1-14, the statute of limitations for personal injury, was the applicable statute, not § 9-1-14.1, which is specific to professional negligence actions, the tolling provisions of § 9-1-19 applied. Rachal, 925 A.2d at 927. We relied on Bakalakis, which we said implicitly stands for the proposition that § 9-1-19 tolls the running of the statute of limitations in personal injury actions, and held, therefore, that the Rachal plaintiff's amendments were proper.[2] Rachal, 925 A.2d at 927. Rachal notes the "unique tolling paradigm set forth in

---

[2] "Ultimately, it is Bakalakis that cements—albeit by implication—the reversal of the denial of the Rachals' motion to amend the complaint and add parties. * * * [T]his Court's formulation of the threshold issue in Bakalakis gives rise to an unmistakable

§ 9-1-14.1[(1)]," and we characterized that "exception carved out by § 9-1-14.1[(1)]" as one that concerns amendments of minors' claims. Rachal, 925 A.2d at 927. I can discern no conflict between my reading of the statute and Rachal.

Finally, in Dowd, the Court discussed the rationale for § 9-1-14.1 and the "medical malpractice crisis" that precipitated its enactment. Dowd, 655 A.2d at 681 ("[f]aced with the crisis, the Legislature had legitimate interests in limiting the number of medical malpractice suits"). In deciding against the plaintiffs' constitutional challenge of the statute, the Court held that "[t]he rational purpose of [§ 9-1-14.1] is the restriction of multiple suits or amended complaints filed against additional defendants on a serial or piecemeal basis." Dowd, 655 A.2d at 682. The Court today is not confronted with "serial or piecemeal" suits, and none of the above cases can, in my opinion, serve as support for the majority's decision. Id.

It is my view that in enacting § 9-1-14.1, the General Assembly intended to bar the serial addition of defendants long after litigation had been initiated and long after the alleged acts of malpractice had occurred. Indeed, that is precisely what occurred in Bakalakis. In other words, the Legislature required plaintiffs in medical negligence cases to lay all their cards on the table at the time suit is brought, and, thereby, in the professional malpractice context, somewhat restrict suits brought by minors, as compared to those under the ordinary tolling provision in § 9-1-19. Thus, a minor plaintiff in a medical malpractice action could no longer interminably string out litigation for years on end by adding new defendants at will until three years after reaching the age of majority. Ironically, however, the opinion of the majority may well portend a similar

inference that but for the exception carved out by § 9-1-14.1[(1)], § 9-1-19 would allow the amendment of a minor's claim at any time before [she] turns twenty-one." Rachal v. O'Neil, 925 A.2d 920, 927 (R.I. 2009) (Suttell, J.) (citing Bakalakis v. Women & Infants' Hospital, 619 A.2d 1105, 1107 (R.I. 1993)).

undesirable result: a long wait simply for litigation to begin. In the case of a three-year-old plaintiff, that wait could be as long as eighteen years.

It well settled that the Legislature is presumed to know the state of the law when it enacts new legislation. See, e.g., Narragansett Food Services, Inc. v. Rhode Island Department of Labor, 420 A.2d 805, 808 (R.I. 1980) ("The Legislature is presumed to know the state of existing relevant law when it enacts * * * a statute."). That being the case, I have confidence that the Legislature knew, when it enacted § 9-1-14.1, that the policy of the law was to protect the rights of those laboring under a legal disability. See Rivers v. American Commerce Insurance Co., 836 A.2d 200, 204 (R.I. 2003) ("this Court has recognized * * * [tolling provisions for minors and other disabilities] * * * are based on clearly defined public policy and equity concerns"). This policy is nearly universal among the states and has profound common-law origins; just one example notes the "deep and long recognized principle of the common law," that "children are to be protected during their minority from the destruction of their rights by the running of the statute of limitations." Williams v. Los Angeles Metropolitan Transit Authority, 440 P.2d 497, 499 (Cal. 1968).

I have confidence as well that the Legislature was fully aware of and appreciated the policy encouraging the prosecution of claims before they are stale. Ryan v. Roman Catholic Bishop of Providence, 941 A.2d 174, 181 (R.I. 2008) (quoting Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49 (1944) ("Statutes of limitation 'are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'")); Rivers, 836 A.2d at 204 (quoting Roe v. Gelineau, 794 A.2d 476, 485 (R.I. 2002) ("[s]tatutes of limitation promote certainty and finality and avoid stale claims")). In my

opinion, to ascribe an intent to the General Assembly to institute a moratorium as lengthy as between the ages of three and eighteen in which a minor cannot avail herself of redress through the courts, as the majority holds here, would require a conclusion that the Legislature dispatched these time-honored principles. There is nothing in § 9-1-14.1 that remotely suggests they did.

The language in § 9-1-14.1(1) says that minors on whose behalf no suit is brought within the three-year period normally applicable to adults "shall bring the action within three (3) years from the removal of the disability." This language is strikingly similar to that in the general tolling provision, § 9-1-19, which says that a plaintiff suffering under a disability "may bring the cause of action, within the time limited under this chapter, after the impediment is removed." There can be no doubt that the language in § 9-1-19 has been interpreted as setting an outside limit for the filing of the claim. See Bliven v. Wheeler, 23 R.I. 379, 380, 50 A. 644, 644 (1901) (interpreting the statute then in effect analogous to today's § 9-1-19). In Bliven, this Court reasoned, "the statute of limitations in this case extends the right of this infant plaintiff to sue until six years after she shall attain the age of [majority]," therefore the plaintiff's suit, filed while still a minor, was "brought in good time, it having been brought several years earlier than it needed to have been."[3] Id. Nothing in our century of law since has held that a minor is barred from suing while he or she remains a minor. The majority's opinion takes the similar language of § 9-1-14.1(1) and uses it to create a legal vacuum that does not permit a minor to sue in what would otherwise be "in good time," albeit early, leaving only the three years after the age of majority is reached in which to file. Bliven, 23 R.I. at 380, 50 A. at 644. Such an intent by the Legislature would not be rational, because it does nothing to limit or mitigate the risk to

---

[3] We agreed with the argument that "the statute merely accords minors the privilege of waiting until they become of age before bringing a suit, and that it does not preclude them from instituting a suit while under age if they choose to do so." Bliven v. Wheeler, 23 R.I. 379, 380, 50 A. 644, 644 (1901).

insurance carriers and medical professionals from malpractice suits. Indeed, it merely prolongs their periods of exposure.

When it addressed the medical malpractice crisis of the 1970s, the General Assembly could have adopted any of a wide array of approaches, including eliminating any tolling provision and treating minors as adults, a system some states resorted to when addressing their own crises. See Schroeder v. Weighall, 316 P.3d 482, 489 (Wash. 2014) (holding unconstitutional, on state constitutional grounds, Wash. Rev. Code Ann. § 4.16.190(2) (West 2015), which eliminated the tolling of the statute of limitations for minors in medical malpractice actions). However, and with all due respect to my colleagues in the majority, it defies common sense to determine that the Legislature would have stymied protections for minors that had been part of the law for centuries.

Respectfully, I cannot agree with the majority's assertion that its construction of the statute will lead to the promotion of our ideals of "certainty and finality and avoid[ance of] stale claims." Roe v. Gelineau, 794 A.2d 476, 485 (R.I. 2002). In my opinion, the result today invites just the opposite scenario: a blameless minor on whose behalf suit was not brought within three years must wait, perhaps up to fifteen years, to prosecute a claim. It takes little imagination to conclude that, during this period, doctors may relocate, retire, or die; hospitals may close or merge; and records may become misplaced or lost. See Ryan, 941 A.2d at 181 (quoting Order of Railroad Telegraphers, 321 U.S. at 348-49 (lamenting a situation where "evidence has been lost, memories have faded, and witnesses have disappeared")). This, in my opinion, works an irremediable injustice upon a minor and cannot be what the General Assembly intended when it enacted the statute.

It is my opinion that the better interpretation of the statute would be to provide minors on whose behalf no suit has been filed within three years of an act of negligence the benefit of the tolling provision inherent in § 9-1-14.1(1) and allow them to file suit at any time up until three years after they attain the age of majority. We essentially said as much in Bakalakis: "[t]he plain language suggests that if no action on behalf of one who is under a disability is brought within three years of the occurrence of the incident, then the statute of limitations is tolled until the maximum of three years after the disability is removed." Bakalakis, 619 A.2d at 1107 (emphasis added). Conversely, and consistent with Bakalakis, if a suit is brought on behalf of a minor within three years of the incident,[4] the minor would have no further right to bring claims against additional defendants in the future because, "if an action is brought within three years of the occurrence of the incident, the minor does not benefit from the tolling of the provision once the disability is removed." Id. Further, I find it noteworthy that this case deals with just one legal disability contemplated by § 9-1-14.1(1), minority, which has a finite end. Applying the majority's reasoning to a plaintiff whose disability has no known set terminus, such as mental incompetency, would leave no guaranteed saving provision for that plaintiff. There is no known time when the disability of incompetence may be removed, thus opening the "window" that the majority's opinion creates. The majority's opinion leaves this complication for another day. In my view, the statute should apply broadly to plaintiffs laboring under any legal disability, thus avoiding the possibility of parsing the legislation among plaintiffs having various disabilities.

The import of Bakalakis, and the Legislature's intent in passing § 9-1-14.1, is, in my opinion, that where suit has not been brought on a minor's behalf within three years of the

---

[4] Alternatively, as the statute clearly states, suit is also proper "within three (3) years of the time that the act or acts of the malpractice should, in the exercise of reasonable diligence, have been discovered." Section 9-1-14.1(2).

incident of professional malpractice, once the minor does bring suit, she is expected to join all defendants to the action within a three-year period, even if she may remain a minor for many years. Indeed, this Court has said very nearly the same thing, "[t]he rational purpose of [§ 9-1-14.1] is the restriction of multiple suits or amended complaints filed against additional defendants on a serial or piecemeal basis." Dowd, 655 A.2d at 682. This interpretation accomplishes the goal of eliminating drawn-out litigation, which can, and does, occur in personal injury suits brought under § 9-1-19, while not abrogating a minor's right to relief or mandating that her claim grow stale in the intervening years before she reaches the age of majority.

For the reasons above, I respectfully dissent from the majority opinion.


**TITLE OF CASE:**  Jean Ho-Rath et al. v. Rhode Island Hospital et al.

**CASE NO:**  No. 2012-208-Appeal.
No. 2012-211-Appeal.
(PC 10-4186)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  May 19, 2015

**JUSTICES:**  Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  Amato A. DeLuca, Esq.

For Defendants:  Scott D. Levesque, Esq.
Robert P. Landau, Esq.