**Supreme Court**

Helen L. Hyde                          :

        v.                                    :                          No. 2014-174-Appeal.
                                                                      (PC 08-5223)

The Roman Catholic Bishop of Providence.    :

Jeffrey Thomas                        :

        v.                                    :                          No. 2014-175-Appeal.
                                                                      (PC 08-4096)

The Roman Catholic Bishop of Providence.    :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| Helen L. Hyde | : | |
| v. | : | No. 2014-174-Appeal. |
| | | (PC 08-5223) |
| The Roman Catholic Bishop of Providence. | : | |
| | | |
| Jeffrey Thomas | : | |
| v. | : | No. 2014-175-Appeal. |
| | | (PC 08-4096) |
| The Roman Catholic Bishop of Providence. | : | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Flaherty, for the Court.** The plaintiffs, Helen L. Hyde and Jeffrey Thomas, brought suit against the Roman Catholic Bishop of Providence, seeking damages arising from their alleged sexual abuse at the hands of Father Brendan Smyth more than four decades ago. The Superior Court granted summary judgment in favor of the defendant. The plaintiffs appealed, arguing that the trial justice erred when she decided that the statute of limitations barred their claims because, they argue, their inability to recall the abuse tolled the statute of limitations until such time as they became aware of their claims against the institutional, nonperpetrator defendant. Moreover, the plaintiffs argue that the trial justice erred when she denied their request to seek discovery on the alternate tolling theory that the defendant

fraudulently concealed their causes of action from them. For the reasons set forth below, we affirm the judgment of the Superior Court.

## Facts and Travel

The plaintiffs filed complaints in Providence County Superior Court against the Roman Catholic Bishop of Providence (defendant), alleging that Father Brendan Smyth sexually abused them on numerous occasions, beginning in 1967 until approximately 1970. The plaintiffs alleged that the acts of abuse visited upon them all occurred while Smyth was under defendant's supervision. At the time of the alleged abuse, Smyth was a visiting priest, counselor, and teacher at Our Lady of Mercy School and Church in East Greenwich. In these positions, Father Smyth had unsupervised interactions with young parishioners and schoolchildren; it was during those encounters that he allegedly took advantage of and sexually abused several children. After he left Rhode Island, Father Smyth returned to his native Ireland, where he was later convicted of serial child molestation. Around 1997, Smyth died in prison.

According to Hyde, Smyth began abusing her in 1967, when she was six years old and a student at Our Lady of Mercy School. Hyde maintained that Smyth sexually abused her in a classroom, in the schoolyard, in church, in her home, and in the woods outside her house.

Hyde was not the only victim of Smyth's claimed sexual abuse to come forward. Thomas alleged in his complaint that, soon after Smyth began to abuse Hyde, he also raped and molested him in the church's rectory and in Hyde's backyard.

In their respective complaints, plaintiffs claim that defendant and his predecessors knew that Smyth was a pedophile by the late 1940s, but that they nonetheless continued to allow him to serve as a priest under their supervision. They maintain that defendant not only knew of Smyth's pedophilia, but also that Smyth's level of sexual abuse caused him to be sent away for

treatment before he was eventually allowed to return to Our Lady of Mercy. Relying on their claim that defendant knew Smyth was a pedophile, plaintiffs filed their complaints, in which they alleged numerous counts of negligence, negligent supervision, vicarious liability, fraud, intentional nondisclosure, and intentional failure to supervise. The plaintiffs also asserted that each of them had repressed recollection of the crimes perpetrated against them and that they did not recover their memories of the abuse until within three years of the filing of the lawsuit.

In response, defendant filed motions to dismiss the complaints. First, defendant argued that, because the statute extending the time for childhood victims of sexual abuse who suffered from repressed memory applied only in the case of perpetrator defendants, the action was time-barred. Second, he argued that plaintiffs had failed to allege sufficient facts that would support tolling of the statute under the "unsound mind" provision found at G.L. 1956 § 9-1-19. The plaintiffs opposed the motions to dismiss, arguing that repressed memory, in and of itself, was a possible tolling mechanism under the "unsound mind" provision of § 9-1-19, that an evidentiary hearing on repressed memory, pursuant to this Court's decision in Kelly v. Marcantonio, 678 A.2d 873 (R.I. 1996), was in order, and that plaintiffs' fraud claims were timely because plaintiffs could not have discovered defendant's fraudulent conduct until they remembered the underlying abuse.

At the hearing on the motions to dismiss, defendant argued that this Court has never held that repressed and subsequently recovered memories, standing alone, without any other indicia, could constitute an unsound mind. The defendant also argued that § 9-1-51 did not apply to nonperpetrator defendants and that there was no requirement for an evidentiary hearing in this case.[1] Much of defendant's argument focused on his position that, for the "unsound mind"

---

[1] General Law 1956 § 9-1-51(a) provides: **Limitation on actions based on sexual abuse or exploitation of a child**, "[a]ll claims or causes of action based on intentional conduct brought by

tolling provision of § 9-1-19 to apply, plaintiffs were required to show some inability to manage their day-to-day affairs, and that, with respect to these particular plaintiffs, Hyde and Thomas had experienced successful careers as a lawyer and as a businessman, respectively.

The trial justice denied defendant's motion, without prejudice, pending an evidentiary hearing to "receive scientific and other data to assess whether repressed recollection ha[d] been established * * *." The trial justice agreed that Kelly had definitively held that suits against nonperpetrator defendants could not be tolled under § 9-1-51. However, the hearing justice also said that it was her opinion that this Court had yet to hold definitively that a trial court "cannot permit repressed memory to toll the [s]tatute of [l]imitations unless the [c]ourt also finds that the [p]laintiff was unable to conduct his or her day-to-day activities." The trial justice directed that an evidentiary hearing be held to determine if plaintiffs could demonstrate having repressed memories that would qualify as "unsound mind" under § 9-1-19. The motion to dismiss having been denied, defendant subsequently filed answers to the complaints.

More than a year later, defendant filed a motion for entry of a scheduling order, attaching a proposed schedule.[2] The plaintiffs' counsel objected to the proposed order, not on the grounds that it was inadequate for discovery on plaintiffs' repressed-memory claims, but because plaintiffs' counsel asserted the right to conduct discovery on an intentional concealment tolling theory pursuant to § 9-1-20.[3] This, defendant argued, would frustrate the intent of the court's

---

any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within seven (7) years of the act alleged to have caused the injury or condition, or seven (7) years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act, whichever period expires later."

[2] The defendant noted that before filing its motion, plaintiffs' counsel had agreed to the order that it had prepared. However, soon after this agreement was reached, plaintiffs' counsel was allowed to withdraw and new counsel entered for plaintiffs.

[3] General Law 1956 § 9-1-20 provides: **Time of accrual of concealed cause of action**, "[i]f any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to

- 4 -

order as to an evidentiary hearing, which was limited to the question of whether repressed memory could constitute "unsound mind" so as to toll the statute of limitations under § 9-1-19. The defendant also argued that plaintiffs had not alleged sufficient facts to support such a theory, and, further, that they had waived the right to present a fraudulent concealment tolling argument.

The plaintiffs responded with a scheduling order of their own; theirs included a provision for discovery based on fraudulent concealment. They argued that they intended to introduce evidence of defendant's fraudulent concealment at the evidentiary hearing on the repressed-memory issue, claiming that, because they had pled fraud and intentional nondisclosure in their complaints, they should be allowed to conduct discovery on those issues. At the hearing on the motions, the hearing justice remarked that "not once did the plaintiff mention fraudulent concealment" during the earlier hearing on defendant's motion to dismiss, and that, "if there was a legal issue or a factual issue that would have provided a defense to the [s]tatute of [l]imitations claim, it was incumbent on plaintiff to raise it at that time, and the plaintiff did not." She determined that, although she would not allow full discovery on this issue, plaintiffs could, in the alternative, file a motion to reargue the motion to dismiss and raise the issue of fraudulent concealment that way. She further directed that each plaintiff file an affidavit on the fraudulent concealment issue and that she might thereafter permit discovery.

The plaintiffs acted on the hearing justice's suggestion and moved to reargue their opposition to defendant's motions to dismiss—this time including their fraudulent concealment claim. The defendant filed an objection and a hearing was held. In deciding the motion, the trial justice began by observing that, to demonstrate fraudulent concealment for the purpose of tolling the statute of limitations, a "plaintiff must show * * * that the defendant made an actual

_____

accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence."

- 5 -

misrepresentation of fact," and "that in making such misrepresentation, the defendant fraudulently concealed the existence of plaintiffs' causes of action." The defendant argued that plaintiffs had actual knowledge of the facts they contended were the foundation of their causes of action, but that fraudulent concealment "requires an action by a defendant to a plaintiff that conceals the cause of action itself," i.e., a type of "affirmative misrepresentation of fact related to their injury." The defendant asserted that plaintiffs' "[a]ctual knowledge negates fraudulent concealment." The plaintiffs responded that there could not be actual knowledge by a minor child who repressed the memory of the injury before reaching the age of majority. The plaintiffs argued that, among other things, a former bishop of Providence had "state[d] under the penalty of perjury that his job was to * * * conceal the information of abuse * * * [and] sanctify the priests * * * [and] return them to minister," and that this constituted "an actual admission by defendants of fraudulent concealment immediately post-abuse."

The trial justice said that the Supreme Court "ha[d] been very, very strict about fraudulent concealment as it relate[d] to cases such as this." Regarding plaintiff Hyde, defendant argued that she would have to show that defendant "misled her into believing that the assault did not occur, [and] that Brendon [sic] Smyth did not commit the assault or that she did not suffer any injuries as a result of the assault." The hearing justice said that none of Hyde's allegations had constituted fraudulent concealment.[4]

When asked by the trial justice what actual misrepresentation defendant made to plaintiff, plaintiff Hyde indicated that, with additional discovery, perhaps such a fact might be uncovered. She also suggested that if evidence were to be produced that would show that her mother went to defendant and reported plaintiff's abuse by Smyth, and if defendant told her mother that her

---

[4] The defendant also argued that it was well known worldwide that Smyth was committing sexual abuses and that he had been convicted on such charges, some of which were even reported in The Providence Journal.

- 6 -

suspicions were unfounded or if he threatened to excommunicate her, those facts would support their theory. The trial justice did not agree; she ruled that she would not allow plaintiffs to combine the claims of fraudulent concealment and repressed recollection so as to extend the statute of limitations, and that "[t]here came a point in time where the fact that Father Jerry [sic], Brenda[n] Smyth, was a pedophile, [and] had abused children in Rhode Island, became disclosed," and "that fact was no longer concealed."

At a later continuation of the hearing, defendant argued that documents that plaintiff Hyde had produced, including her own journal entries from 2005, indicated that she "was actively investigating a cause of action against Brendon [sic] Smyth as early as June of 2005." With respect to Thomas, defendant argued that "Mr. Thomas never allege[d] any misrepresentation by anyone at any time on any matter."

The trial justice found that there was no evidence of actual misrepresentations made by defendant to plaintiffs regarding their civil claims that could have tolled the applicable statute of limitations. Specifically, she said, "[t]here [wa]sn't an iota of evidence * * * that between the ages of [eighteen] and [twenty-one] there were any misrepresentations made to Ms. Hyde, [or] to Mr. Thomas." She further found that any misrepresentations defendant may have made to plaintiff Hyde's mother were only applicable to plaintiff's mother until plaintiff reached the age of eighteen, because her mother's ability to bring a lawsuit on her behalf came to an end at that time.

She further concluded that plaintiffs had "attempted to circumvent the well-established case law, that [§] 9-1-51 does not apply to non-perpetrator [d]efendants by drafting an argument under [§] 9-1-20." At the conclusion of the hearing, the trial justice denied plaintiffs' motion for limited discovery as to fraudulent concealment. In so doing, she said that she could "conceive of

no set of facts that [p]laintiffs could develop through discovery that would permit them to defeat the motion to dismiss based upon the Doctrine of Fraudulent Concealment."

**The Parties Stipulate as to the Need for an Evidentiary Hearing**

During the course of these hearings, the trial justice discussed her understanding of Rhode Island law on repressed recollections:

> "THE COURT: * * * It is quite clear that the Rhode Island Supreme Court provided guidance on a definition of unsound mind. The whole issue before this [c]ourt, at this moment, is whether our Court in Kelly v. Marcantonio and in Roe v. Gelineau, was stating that even if the trial justice * * * is sufficiently satisfied * * * that the [p]laintiff did indeed suffer from a traumatic repressed recollection as the result of the conduct of the actual perpetrator, that such repressed recollection in and of itself constitutes a condition tantamount to the unsound mind referred to in [§] 9-1-19, or whether the [c]ourt must * * * then determine not only whether the [p]laintiff had a repressed recollection caused by the trauma of the perpetrator's conduct, but whether this repressed recollection met the standard of unsound mind as defined in the Gelineau case. * * *
>
> "What is a little troubling to me is that the Rhode Island Supreme Court stopped short of saying that. * * * [T]hey showed two cases not that many years apart that, together, really don't answer the question before the [c]ourt today. * * *
>
> "I'm going to take those two cases and say that the Rhode Island Supreme Court has not specifically stated that where the trial justice has a hearing on whether the evidence advanced on repressed memory is scientifically valid and relevant to the case, that the [C]ourt cannot permit repressed memory to toll the [s]tatute of [l]imitations unless the [c]ourt also finds that the [p]laintiff was unable to conduct his or her day-to-day activities."

An order entered directing the parties to proceed with the previously scheduled evidentiary hearing on whether plaintiffs had repressed recollections and whether those repressed recollections, in and of themselves, could qualify as "unsound mind" for the purposes of tolling the statute of limitations pursuant to § 9-1-19.

- 8 -

However, before the hearing took place, the parties filed a stipulation agreeing to waive the requirement of an evidentiary hearing and suggesting that defendant's motion to dismiss be converted into a motion for summary judgment. For the purposes of that motion only, the stipulation also set forth thirteen agreed factual statements, including that Smyth sexually abused plaintiffs, that they experienced repressed recollections of the abuse until 2005, and that plaintiffs had been able to manage their day-to-day affairs. When the parties appeared before the trial justice, defendant argued that, assuming that (1) the abuse of plaintiffs occurred as set forth in their complaints, and (2) their memories of the abuse were repressed and later recovered, plaintiffs' claims were nonetheless barred by the statute of limitations, which it asserted had expired in 1985, three years after plaintiffs reached the age of majority. Thus, according to defendant, the only remaining issue was whether repressed memory itself qualified as "unsound mind" for purposes of § 9-1-19. The defendant contended that the General Assembly specifically enacted § 9-1-51 to allow those with repressed recollection to bring suit but excluded nonperpetrator defendants from that tolling provision. The defendant further argued that this Court had addressed the issue of what constituted "unsound mind" in Roe v. Gelineau, 794 A.2d 476 (R.I. 2002), and described it as when a "person has an inability to manage their day-to-day affairs or their day-to-day activities." The defendant asserted that the facts stipulated to by the parties left no question that plaintiffs "were able to handle their day-to-day affairs from the time that they reached the age of majority in 1982 until the time that they recovered their memories."

The plaintiffs conceded that they were able to pursue their day-to-day affairs and agreed that "[t]hat's off the table." The trial justice concurred, finding that "[n]either of these [p]laintiffs ha[d] suffered periods of time as adults where they were unable to manage their own affairs" and that "[t]hey [we]re both impressive and productive individuals." She concluded that

it was "quite clear that [these plaintiffs] do not meet the definition of unsound mind stated in [§] 9-1-19."

In a bench decision, the trial justice explained that this Court already had grappled with the issue of the tolling of the statute of limitations based on repressed memory in cases such as these, and that this Court had "determined that the cause of action accrues at the time of the offense, not when the [p]laintiff becomes aware through a recovered memory that it occurred." She next delineated the two means by which a plaintiff might toll the statute of limitations. The trial justice addressed § 9-1-51(a), which provides that

> "[a]ll claims or causes of action based on intentional conduct brought by any person for recovery of damages for injuries suffered as a result of childhood sexual abuse shall be commenced within (7) seven years of the act alleged to have caused the injury or condition, or (7) seven years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act, whichever period expires later."

The trial justice observed that the General Assembly had not chosen to include nonperpetrator defendants within the purview of § 9-1-51, noting that "any claim against Smyth, if he was still alive, would fall within [§] 9-1-51, but any claim against the named [d]efendant[s] would not." The trial justice also commented that the General Assembly had had ample opportunity to amend § 9-1-51 to include nonperpetrator defendants within its ambit since the Supreme Court's decision in Kelly, but had not done so.

The trial justice then turned to the unsound-mind provision contained in § 9-1-19, the only other tolling avenue available to plaintiffs. After stating that it was "quite clear" that plaintiffs did not meet the definition of unsound mind as set forth in Roe because they were able to manage their day-to-day affairs, the trial justice granted defendant's motion for summary judgment. Judgment entered in favor of defendant, and plaintiffs timely appealed.

- 10 -

## Standards of Review

This Court reviews a trial justice's decision to grant summary judgment de novo. Woodruff v. Gitlow, 91 A.3d 805, 809 (R.I. 2014). In undertaking that review, we use the same standards and rules that the trial justice used. IDC Properties, Inc. v. Goat Island South Condominium Association, Inc., 128 A.3d 383, 388 (R.I. 2015). Accordingly, we will affirm the grant of summary judgment if, after viewing the evidence in the light most favorable to the nonmoving party, we conclude that there are no genuine issues of material fact that must be decided and that the moving party is entitled to judgment as a matter of law. Peerless Insurance Co. v. Luppe, 118 A.3d 500, 505 (R.I. 2015). Because the parties stipulated that there were no disputed facts, the only issue addressed by the trial justice was the applicability of the statute of limitations. "[W]hether a statute of limitations has run against a plaintiff's claim is * * * a question of law" that we likewise review de novo. Ho-Rath v. Rhode Island Hospital, 115 A.3d 938, 942-43 (R.I. 2015).

But, unlike our nondeferential review of a trial justice's decision to grant summary judgment on statute-of-limitations grounds, we accord a trial justice's rulings concerning discovery matters considerable deference, reversing those rulings only for an abuse of discretion. Shelter Harbor Conservation Society, Inc. v. Rogers, 21 A.3d 337, 343 (R.I. 2011) ("[t]he Superior Court has broad discretion to regulate how and when discovery occurs"); see also Colvin v. Lekas, 731 A.2d 718, 720 (R.I. 1999) ("[T]his Court will not disturb a decision by a Superior Court justice relating to discovery save for an abuse of that discretion.").

**Analysis**

**A**

**Repressed Recollection**

**1**

**A Review of "Unsound Mind" and the Statute of Limitations**

The first question we must answer is whether plaintiffs' repressed recollection, standing alone, satisfies the disability condition of "unsound mind" sufficient to toll the statute of limitations under § 9-1-19. Before answering that question, however, we feel it necessary to review our previous case law regarding repressed recollection and the statute of limitations.

The statute of limitations for personal injuries says that "[a]ctions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after * * *." Section 9-1-14(b). However, the running of the statute of limitations may be stopped or "tolled" by several legal disabilities that are enumerated in § 9-1-19. Specifically, as it pertains to this case, § 9-1-19 provides that "[i]f any person at the time any such cause of action shall accrue to him or her shall be * * * of unsound mind * * * the person may bring the cause of action, within the time limited under this chapter, after the impediment is removed."

Another instance that tolls the statute of limitations is an equitable tolling feature known as the "discovery rule." Under that rule, "the statute of limitations does not begin to run until the plaintiff 'discovers, or with reasonable diligence should have discovered, the wrongful conduct of the [defendant].'" Mills v. Toselli, 819 A.2d 202, 205 (R.I. 2003) (quoting Supreme Bakery, Inc. v. Bagley, 742 A.2d 1202, 1204 (R.I. 2000)).

The main purpose of the discovery rule is "to protect individuals suffering from latent or undiscoverable injuries who then seek legal redress after the statute of limitations has expired for

a particular claim." Sharkey v. Prescott, 19 A.3d 62, 66 (R.I. 2011) (quoting Canavan v. Lovett, Schefrin and Harnett, 862 A.2d 778, 783 (R.I. 2004)). Over the years, this Court has applied the discovery rule to a limited class of cases, including medical malpractice cases, Wilkinson v. Harrington, 104 R.I. 224, 243 A.2d 745 (1968), products liability for damage to personal property, Romano v. Westinghouse Electric Co., 114 R.I. 451, 336 A.2d 555 (1975), damage to real property, Lee v. Morin, 469 A.2d 358 (R.I. 1983), and in products liability actions against drug manufacturers, Anthony v. Abbott Laboratories, 490 A.2d 43 (R.I. 1985).

In one case, we were asked to determine whether the discovery rule should apply in cases of repressed recollection in childhood sexual abuse cases against perpetrator defendants. In Doe v. LaBrossee, 588 A.2d 605, 607 (R.I. 1991) (LaBrossee I), we granted certiorari after the defendant's motion for summary judgment in a civil sexual assault lawsuit was denied. The plaintiffs, the adult daughters of the defendant, had sued their father well after the three-year statute of limitations period expired. Id. at 606. However, the plaintiffs claimed that the discovery rule was available to them based on their repressed memories of the childhood sexual abuse. Id. Without answering that question, we remanded the case to the Superior Court for an evidentiary hearing so that the trial justice could "determine the date the plaintiffs discovered, or with all due diligence should reasonably have discovered, the causal connection between the defendant's alleged acts and the plaintiffs' alleged injuries." Id. at 607. Only then would we "determine the propriety of applying the discovery rule to toll the statute of limitations in this case." Id. In the meantime, however, the General Assembly enacted § 9-1-51, statutorily creating a discovery rule for actions against perpetrator defendants in childhood sexual abuse cases. Doe v. LaBrossee, 625 A.2d 222, 222 (R.I. 1993) (LaBrossee II). As a result, we remanded the cases to the Superior Court for a second time for the trial justice to apply the newly

enacted statute.  Id.

We have also addressed the issue of repressed recollection in the criminal context.  In State v. Quattrochi, 681 A.2d 879, 879-80 (R.I. 1996), the perpetrator defendant was convicted of two counts of first-degree sexual assault.  The victim alleged that she did not recall the past abuse until years later, when she was admitted to a hospital for mental-health treatment.  Id.  In discussing the "flashbacks" about which she testified, we noted that, "[p]erhaps no area of the law has been more productive of controversy than that of the reliability and admissibility of testimony, expert and otherwise, relating to repressed recollection."  Id. at 881.  After observing that repressed recollection could arise in "circumstances when recollections have been repressed for many years and then released in the course of psychological treatment or psychiatric therapy," id. we nonetheless declined to "resolve the controversy concerning the reliability and admissibility of repressed recollections as well as the expert testimony that may corroborate and support the basis for such repression and the reliability of the flashbacks or recovered recollections when they are offered at trial."  Id. at 883.

As to the discovery rule's application to nonperpetrator defendants, that question remained unanswered until our decision in Kelly.  In several certified questions from the United States District Court for the District of Rhode Island and the Superior Court, we were asked to determine whether § 9-1-51 allowed the tolling of suits against nonperpetrator defendants and whether repressed recollection qualified as a disability under the "unsound mind" provision of § 9-1-19 that would toll the limitations period against nonperpetrator defendants.  Kelly, 678 A.2d at 879.  After answering the first question in the negative, we declined to take a categorical approach to the second, and instead vested a trial justice with discretion to determine the validity of repressed-recollections claims.  Id.  We held that a plaintiff claiming to have a repressed

recollection must show, in the first instance, that the alleged facts establish a demonstrable repressed recollection. Id.

If the plaintiff is able to make that threshold showing, then a procedural mechanism is triggered whereby the trial justice would be required to conduct an evidentiary hearing to reach one of four outcomes. Kelly, 678 A.2d at 879. First, the trial justice might decide that, based upon the facts of the specific case, repressed recollection is a scientifically and validly accepted theory that qualifies as a disability under § 9-1-19. Kelly, 678 A.2d at 880. Second, the trial justice might conclude that, although repressed recollection is a scientifically and validly accepted theory, it in and of itself does not qualify as a valid tolling mechanism under § 9-1-19. Kelly, 678 A.2d at 880. Third, the trial justice could determine that repressed recollection is not a scientifically and validly accepted theory and, that, therefore, the tolling provision in § 9-1-19 would not apply. Kelly, 678 A.2d at 880. Finally, the trial justice could find that, even though repressed recollection is a scientifically and validly accepted theory, a plaintiff failed to establish the existence of repressed recollection that would have tolled the statute of limitations. Id. No matter which option the trial justice chose, we ultimately held that it would be "the trial justice who, in the first instance, must determine * * * whether repressed recollection is included within the tolling condition of 'unsound mind' in a particular case." Id. at 879.

Absent from that analysis, however, was exactly what the General Assembly meant when it employed the term "unsound mind." We answered that question in Roe. There, the plaintiff alleged that he suffered sexual abuse at the hands of several abusers while residing in a church-run orphanage. Roe, 794 A.2d at 479-80. In a complaint filed against the nonperpetrator defendant, the plaintiff alleged that the three-year statute of limitations on his personal injury claims had been tolled for several reasons, including the "unsound mind" disability under

- 15 -

§ 9-1-19. The plaintiff founded that claim on his inability to remember certain events surrounding the abuse. Roe, 794 A.2d at 480. To support his repressed-recollection claims, the plaintiff submitted an affidavit from a psychologist, in which it was averred that the plaintiff had "briefly mentioned [the] abuse * * * but 'it was never something he was able to focus on or process in therapy' because 'it was too difficult for him to deal with.'" Id. at 483. The record also revealed that the plaintiff had mentioned the abuse to "at least four people on at least five occasions when he was between the ages of thirteen and twenty-two." Id. at 484. The Superior Court dismissed the complaint without holding an evidentiary hearing because it found that the plaintiff's allegations did not overcome the threshold showing of repressed recollection under the first step of Kelly. Id.

We affirmed the judgment, holding that the plaintiff was unable to establish that he suffered from "the type of repressed recollection discussed in Kelly and Quattrochi." Roe, 794 A.2d at 484. Specifically, we rejected the plaintiff's contention that "his inability to recall or to deal with his abuse and his concomitant inability to file suit for these specific claims [were] conditions that should be included within the ambit of the term unsound mind * * *." Id. at 482. Because the plaintiff's allegations were limited to "memory lapses and the inability to deal with his abuse in therapy," we held that he "did not trigger Kelly's procedural mechanism, requiring an evidentiary hearing on whether his alleged repressed recollection constituted an unsound mind for tolling purposes." Id. at 484.

The plaintiff in Roe alternatively argued that he was of unsound mind for reasons other than repressed recollection, asserting that he suffered from substance abuse, psychiatric disorders, and a below average intelligence. Roe, 794 A.2d at 487-88. We determined that, although we had not defined "unsound mind" for the purposes of § 9-1-19, it became necessary

- 16 -

to do so in that case "to determine whether plaintiff was of unsound mind for reasons other than repressed recollection." Roe, 794 A.2d at 484.

After reviewing the historical context of the term, we held that, for the purposes of § 9-1-19, "unsound mind" meant "the inability to manage one's day-to-day affairs." Roe, 794 A.2d at 486. We explained that we chose that definition based on our belief "that defining unsoundness of mind in terms of the concrete, objective standard of inability to manage one's day-to-day affairs complies with the statutory intent of the term and is consistent with our holdings in numerous cases." Id. at 487. After defining "unsound mind," we went on to apply that definition to the plaintiff's condition and determined that, despite his low intelligence, memory problems, hospitalizations, and psychiatric issues, his condition did not rise to the level of unsound mind that would toll the running of the three-year statute of limitations contained in § 9-1-14(b). Roe, 794 A.2d at 487-88. However, after our opinion in Roe, there remained an ambiguity about whether this Court meant for that definition to apply to repressed recollection.

**2**

**Application to Plaintiffs' Claims**

For the purposes of summary judgment, the parties stipulated that, among other things, plaintiffs were sexually abused by Smyth, plaintiffs suffered repressed recollection of that abuse until 2005, and that plaintiffs were able to manage their day-to-day affairs. Based upon those agreed-to-facts, the trial justice found that plaintiffs did not meet the definition of "unsound mind" as we had defined it in Roe and she granted summary judgment in favor of defendant. On appeal, plaintiffs maintain that repressed recollection is a separate and disctinct type of unsound mind disability that, apart from the inability to manage their day-to-day activities, entitles them to toll the three-year statute of limitations for their claims against defendant.

- 17 -

Because of the ambiguity that remained after our decision in Roe, our earlier cases do not answer the precise question that we must address in this case. Although we left open the possibility in Kelly that repressed recollection of past sexual abuse by nonperpetrator defendants, standing alone, could qualify as an unsound mind disability under § 9-1-19, we did not go as far as to conclude that it does. Indeed, in Roe we acknowledged that Kelly left open that "the inability to bring a particular claim may be included in the purview of the term 'unsound mind' for purposes of the tolling statute in one particular context, namely, that of repressed recollection." Roe, 794 A.2d at 482.

Without question, repressed recollections have engendered much debate and controversy, and have required legislatures to make, and courts to consider, difficult policy decisions. See Kelly, 687 A.2d at 879; Quattrochi, 681 A.2d at 881. Inherent in this debate is the concern over prejudicial delay to defendants because of a plaintiff's repressed recollections. Statutes of limitations "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Ryan v. Roman Catholic Bishop of Providence, 941 A.2d 174, 181 (R.I. 2008) (quoting Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49 (1944)). We appreciate the sage logic of the late Chief Justice Joseph R. Weisberger that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." Anthony, 490 A.2d at 49 (Weisberger, J. dissenting). And indeed, the allegations giving rise to plaintiffs' complaints are nearly a half-century old. Counterbalancing the purpose behind statutes of limitations, however, is the state's interest in providing a remedy for rights claimed by its citizenry. See, e.g., R.I. Const. art. 1, sec. 5. Statutes of limitations, then, are "the product of a balancing of the individual person's right to seek redress for past

grievances against the need of society and the judicial system for finality—for a closing of the books." Ryan, 941 A.2d at 181.

In enacting § 9-1-51, the General Assembly expressly acknowledged the validity of repressed recollection and devised a specific mechanism allowing victims to bring suit long after the statute-of-limitations period has expired. It is significant that the General Assembly enacted § 9-1-51 soon after we "specifically hesitated to judicially integrate a discovery rule into those cases." Kelly, 678 A.2d at 878. The plaintiffs essentially now ask us to judicially engraft a discovery rule onto § 9-1-19, something we have explicitly declined to do in the past because it would undermine the General Assembly's deliberate decision to expand the statute of limitations as to perpetrator defendants, but not nonperpetrator defendants.

In Kelly, 678 A.2d at 878, we deferred to the General Assembly's judgment and refused to adopt a judicially created discovery rule that is broader than what the legislature intended. In holding that § 9-1-51 applies only to perpetrator defendants, we said that:

> "We perceive no persuasive policy considerations that the General Assembly failed to consider when enacting § 9-1-51 that would support judicial application of a discovery rule to claims made against nonperpetrator-defendants. * * * The General Assembly when it enacted § 9-1-51 * * * is presumed to have known that it limited the discovery rule provided therein to only those claims of alleged sexual abuse made against the actual perpetrators of the abuse." Kelly, 678 A.2d at 878, 878-79.

We embrace that reasoning today. When it enacted § 9-1-51, the General Assembly addressed a complex and controversial area of tort liability, and it limited the application of repressed recollection via the discovery rule to the actual abusers, because "it is the perpetrator of the abuse who is responsible for instilling the psychological defense mechanism leading to repression," and that causal connection was what justified enacting "a delayed discovery statute of limitations directed specifically at the perpetrator of the sexual abuse." Kelly, 678 A.2d at

- 19 -

878 (quoting <u>Debbie Reynolds Professional Rehearsal Studios v. Superior Court</u>, 30 Cal. Rptr.2d 514, 520 (Cal. Ct. App. 1994)). After a thorough analysis, we are confident that the General Assembly weighed the competing policies and respective interests of plaintiffs and defendants alike when it enacted § 9-1-51.

We acknowledge plaintiffs' argument that an incongruity occurs when the requirement that a plaintiff be unable to conduct his day-to-day affairs is combined with an inability to recollect past abuse. In other words, a plaintiff would be hard-pressed to establish that he or she suffered repressed recollection while simultaneously suffering from a disability that rendered him unable to manage his day-to-day affairs. Indeed, the phenomenon of losing conscious awareness of abuse becomes irrelevant because the inability to manage one's day-to-day affairs would toll the statute of limitations irrespective of a plaintiff's loss of memory. However, to the extent that <u>Kelly</u> left open the option that repressed recollection, standing alone, could toll the statute of limitations with respect to nonperpetrator defendants, we now foreclose it and hold that, under § 9-1-19, repressed recollection, in and of itself, is not a viable tolling mechanism against nonperpetrator defendants in childhood sexual abuse cases. In our opinion, reading § 9-1-19 and § 9-1-51 together makes it clear that § 9-1-51 sets forth the exclusive means by which the statute of limitations can be tolled based on the repressed recollection of childhood sexual abuse.

**B**

**Fraudulent Concealment**

The plaintiffs next contend that the trial justice wrongly denied them the opportunity to seek discovery on their alternative tolling theory that defendant fraudulently concealed their causes of action. The fraudulent concealment provision found in § 9-1-20 says that:

> "If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence."

In Ryan, this Court observed that "[i]n order to demonstrate that there has been fraudulent concealment on the part of a defendant, a plaintiff must show: (1) that the defendant made an actual misrepresentation of fact; and (2) that, in making such misrepresentation, the defendant fraudulently concealed the existence of [the] plaintiff's causes of action." Ryan, 941 A.2d at 182. Therefore, to find a safe harbor based on fraudulent-concealment tolling, plaintiffs "must demonstrate that the defendant made an 'express representation or [engaged in] other affirmative conduct amounting in fact to such a representation which could reasonably deceive another and induce him [or her] to rely thereon to his [or her] disadvantage.'" Id. at 182-83.

The plaintiffs allege that defendant made an array of misrepresentations: that defendant knew of Smyth's abuse and failed to disclose or report it; that the parish where he worked held him out to the community as in good standing; that plaintiff Hyde told her mother of the abuse and that, when either her mother or her grandmother attempted to complain, they were threatened with excommunication; that a prior Providence bishop had made a sworn statement in an unrelated case that he was tasked with protecting priests accused of abuse and returning them to the ministry; and finally that, when plaintiff Hyde recovered her memories in 2005 and confronted defendant, they attempted to deflect and conceal the fact of Smyth's abuse.

However, none of these allegations, even if true, would toll the running of plaintiffs' claims under § 9-1-20. First, regarding the failure to report or disclose Smyth's abuse, this Court has held that "[m]ere silence or inaction on the part of the defendant does not constitute actual misrepresentation in this context." Ryan, 941 A.2d at 182. Thus, it is not enough that defendant

failed to disclose the facts of plaintiffs' injury to them. Furthermore, the fact that defendant may have known that Smyth had abused children does not indicate that that knowledge was specific as to these plaintiffs. Second, the fact that defendant may have threatened plaintiff Hyde's family members with excommunication does nothing to establish that defendant misled the individual plaintiffs into believing that no cause of action existed. That is so because those threats had no effect on plaintiff Hyde or her family's belief that the abuse occurred, that it was Smyth who was the perpetrator, or that there was no resulting injury from the abuse. Third, the allegation that defendant attempted to deflect or conceal the abuse when confronted by plaintiff Hyde after she recovered her memory of the abuse is also unavailing. Indeed, at that time, plaintiff Hyde was actively investigating Smyth as an abuser and, as evidenced by this suit, any denial on defendant's part could not have misled her into thinking that the abuse did not occur. Finally, the fact that defendant may have held Smyth out to the community as being in good standing is likewise unavailing. Even to the extent that the record suggests that defendant made efforts to conceal the sexual abuse from the public, that is concealment of a kind quite separate and apart from the kind of misrepresentation to plaintiffs themselves that would be required to show fraudulent concealment in order to toll the statute of limitations.

In sum, we fail to see how any of the alleged conduct by the defendant could have misled these plaintiffs "into believing that the sexual assault did not occur." Ryan, 941 A.2d at 183. For that reason, we are of the opinion that the trial justice did not err when she denied the plaintiffs' request to seek discovery on their alternate tolling theory.

**Conclusion**

For the reasons set forth above, we affirm the grant of summary judgment. The record is remanded to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

---

**TITLE OF CASE:**   Helen L. Hyde v. The Roman Catholic Bishop of Providence.

Jeffrey Thomas v. The Roman Catholic Bishop of Providence.

**CASE NO:**   No. 2014-174-Appeal.
(PC 08-5223)

No. 2014-175-Appeal.
(PC 08-4096)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   June 22, 2016

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Netti C. Vogel

**ATTORNEYS ON APPEAL:**

For Plaintiffs:   Bartholomew Dalton, Pro Hac Vice
Lauren E. Jones, Esq.
Paul S. Cantor, Esq.

For Defendant:   Melissa E. Darigan, Esq.
Howard A. Merten, Esq.
Eugene G. Bernardo II